RHODES *v.* SURVANT.

4-7812                                          192 S. W. 2d 880

Opinion delivered February 11, 1946.

Rehearing denied March 25, 1946.

*Gaughan, McClellan & Gaughan,* for appellant.

*Francis W. Wilson* and *J. Bruce Streett,* for appellee.

SMITH, J. This suit was filed by R. S. Clark and L. K. Survant to enforce the specific performance of a contract to lease a certain building owned by Arthur Rhodes in the City of Camden, to be used as a cafeteria. The only parties to the contract were Survant and Rhodes, but the complaint alleged that at the time of the execution of the contract, and at all times since, Clark was and has been a partner of Survant, and as such was entitled to the benefit and subject to the obligations of the lease agreement. Inasmuch as Clark was not named as a party to the lease agreement, the court, on motion of Rhodes, struck Clark's name from the complaint and the cause proceeded with only Survant and Rhodes as parties.

The contract was negotiated a few days after it had been publicly announced that a Naval Ordnance Plant would be erected near Camden, which would cost many millions of dollars, and give employment to thousands of men, and within a very short time the population of the City of Camden was doubled. The housing problem became very acute, and Rhodes began the construction of a tourist court, and contracted with Survant to lease the building here in question, which Survant testified had been used as a garage.

The lease here sought to be enforced provided for a rental of $200 per month for the first two years, and $250 per month for the remaining three years, and that "rent shall be payable in advance, and the term of this lease is

five years from the date when it (the building) is ready for occupancy.''

The lease agreement recites that:

''Lessee has paid to lessor the sum of five hundred ($500) dollars advance rent, receipt of which is hereby acknowledged, and shall pay on the date when the building is ready for occupancy the sum of $700. The two payments aggregating twelve hundred ($1,200) dollars shall apply on the first six (6) months rent.''

Under the contract, had it been fully performed, Rhodes would have received from Survant $13,800 rent, but on February 20, 1945, Rhodes executed another lease to one Drew, which would, if performed, have paid Rhodes $21,000 as rent for the same period of time. The relief prayed was granted, and Rhodes was ordered to deliver possession to Survant, and there was a stipulation incorporated in the decree as a part thereof, as to what the damages would be if that decree were affirmed. The lease contained also the following recital:

''In the event the lessee should fail to pay the monthly rental within twenty days after such rental is due, or in the event the lessee should be adjudged a bankrupt, or lessee's property should be seized for taxes, or an attachment, or other liens, lessor shall have the right to terminate this contract and upon the termination of the contract for said cause, or any other reason, lessor shall have the right to immediate possession of the leased premises without the necessity of resorting to any legal' proceedings.''

Rhodes insists that there was a judgment against Survant upon which an execution issued, and the property of Survant was seized, and that the provisions of the contract, just quoted, authorized him to cancel the lease, and, on February 2, 1945, a letter was written advising Survant that Rhodes had exercised this option and had canceled the lease. His right to do so constitutes, we think, the decisive question in the case.

This was the view of the court below expressed in the written opinion of the chancellor which contained the finding of fact that there had been no seizure of Survant's property under the execution and this appeal is from the decree based upon that finding of fact.

It appears that a judgment for $1,370.81 had been recovered against Survant in the Jefferson circuit court, on which an execution issued December 16, 1944, upon which the sheriff made the following return:

"This execution came to hand December 18, 1944, and I hereby certify that I have duly served same on same date, the defendant L. K. Survant saying that he had nothing which we could levy upon, and on February 15, 1945, upon request of attorney for plaintiff hereby return this execution to court as unsatisfied." It is insisted by appellant, however, that notwithstanding this return, there had been in fact a seizure under this execution of appellee's property in Jefferson county, consisting of a restaurant. The attorney for the judgment creditor testified that, "I instructed the sheriff's office that if Survant so desired and promised that he would take care of the property, and not make any attempt to dispose of it, or any part of it, to allow it to remain in his possession and custody and use it in the operation of his restaurant business," and that nothing further transpired until February, 1945. In the meantime the attorney learned that an equipment company in Little Rock, dealing in restaurant fixtures, had a lien on this property, and the attorney was not sure that Survant had an equity of sufficient value to realize the amount of the judgment. The attorney learned also that Rhodes had in his hands $500, paid to him by Survant, and he had a writ of garnishment issued, which was served February 5, 1945, and the attorney had the sheriff post notice of sale of the property in this restaurant, which notice was posted February 9, 1945. It then came to the attention of the attorney that the sale date of February 20, 1945, fixed in the notice, would be after the expiration date of the execution, which had been issued December 16, 1944, and the

attorney then procured the issuance of an alias execution on February 14th. Under this last execution, notice of levy was posted in the building containing the property, this being done February 14, 1945, and the sheriff was directed to lock up the place of business, but Survant called the attorney and promised to satisfy the judgment the next day, and the order to the sheriff to lock up the place was countermanded, but the sheriff was told to post notice of the levy and the sale. On February 16th, the judgment was satisfied.

The question suggests itself, although it is not argued in the briefs that the provisions of the contract providing for its annulment contemplated a delinquency in payment of the rent for 20 days after the rent was due. Now the contract required an advance payment of $1,200 of which $500 was actually paid. As to the balance of $700, more will presently be said. As a matter of fact, Survant was never placed in possession and the right of Rhodes to take possession was conferred, if and when Survant defaulted in payment of rent, and he was not in default in that respect. But we pretermit that question, and return to a consideration of the question upon which the court below decided the case, that is, whether there had been a seizure of Survant's property under the execution.

The attorney for the judgment plaintiff in the case in which the execution issued, further testified that the sheriff levied the execution upon Survant's property in Jefferson county and evidenced that fact by posting notices in January, 1945, but admitted that Survant's possession was not disturbed. Now an execution might be levied by a seizure of the property of the judgment defendant, without actually taking the property from the defendant's possession, provided the defendant was left and placed in possession, by the sheriff, with directions to hold it for the sheriff. In other words, the custody must be changed. Section 225, Ch. Executions, 23 C. J., p. 436; § 97, Ch. Executions, 33 C. J. S., p. 244. In the text last cited it is said: "There must be some act which

amounts to a change of possession, or which is equivalent to a claim of dominion over the property, coupled with the right to enforce it.''

In the case of *Brown* v. *Vaughan,* 184 Ark. 364, 42 S. W. 2d 558, the facts were that an execution issued against Vaughan's property, and the sheriff proceeded to Vaughan's law office to serve it, and seized and listed certain law books, but left them in Vaughan's custody. After returning to his office the attention of the sheriff was called to the fact that he had failed to include in the list of books which he had levied upon certain other law books, and he amended the list to include them. All the books were sold in bulk and the sale was held to be void, not because the books had been left in Vaughan's possession, but because the sheriff had not assumed dominion over all of them when he had prepared the list of books upon which he made the levy. In other words, the sheriff to have made a valid levy should have assumed control or dominion over all the books, and he was authorized to sell only those books of which he took dominion which he could have done although after assuming dominion he had left the books in Vaughan's possession.

But even though the notice of his levy was posted in January, had the sheriff taken Survant's property in his possession? No one would know as well as he whether he had done so or not, and when the sheriff made his return upon the execution, he stated he had found nothing upon which he could levy. This return could not have been made if he had in fact taken the restaurant into his possession. The statute provides, § 5368, Pope's Digest, that ''if (the execution is) levied . . . and no property has been found he must state the fact.''

In the case of *Justice, Sheriff,* v. *Hoch,* it was held by the Supreme Court of Colorado, 84 Colo. 528, 271 Pac. 1116, to quote the headnotes in the case, that the ''Lien given by statute under writ of execution does not clothe officer with any property, special or general, nor with any present possessory right until valid levy has been made under writ,'' and further that a valid levy had not

been made when the officer, without taking possession of the defendant's goods, had merely made up a list of goods, "and tacked up notice of levy on building" in which the goods were located.

We conclude, therefore, that the court below was warranted in finding, as was found, that there had been no seizure of appellee's goods within the meaning of the provisions of the lease set out above.

The purpose of this provision was, of course, to assure Rhodes of the solvency of his tenant and of the tenant's ability to pay the rent, and we think the testimony shows that he was able to pay. He had taken Clark into partnership to operate the cafeteria in the building in question, and Clark's solvency was shown. Clark voluntarily made himself a party to this suit, and offered to sign the lease or any other instrument if required, which would bind him to the performance of its conditions. It was shown also that Survant had arranged with one Steed for financial assistance and Steed testified that he was ready and willing and able to render any assistance required. Steed's solvency was shown and not questioned.

Rhodes learned that Survant was indebted to the Dixie Equipment Company of Little Rock on an account for fixtures used by Survant in his Pine Bluff restaurant, upon which the execution was supposed to have been levied. Survant would have required additional fixtures to operate the cafeteria in Rhodes' building, but the manager of the Equipment Company testified that he had received, and would have filled, and even now would fill this order, notwithstanding Survant's arrearage in his account. A final and binding order for this equipment was not given, but Survant testified that he was unwilling to give the order until the building was ready for occupancy.

The lease contemplated an advance payment of $1,200 on account on the rent, of which only $500 had been paid Rhodes. But the lease did not require this payment until the building was ready for occupancy and the

testimony shows that the building was never completed and made ready for occupancy until after Rhodes had made the second lease to Drew, which was dated February 20, 1945. However, Survant tendered and paid this balance of $700 into court. .

We conclude that the decree of the court below should be affirmed for the reason that the condition which authorized the cancellation of the lease did not exist.

That decree appears to be correct for an additional reason. Survant was notified in a letter dated February 2, 1945, that the lease had been canceled because his property had been seized under execution, but no offer to return the $500 paid Rhodes was made. On the contrary the notice of cancellation stated:

''You paid $500 advance rent at the time the contract was executed. We are not certain whether you are entitled to a refund of this money and for the present, Mr. Rhodes is holding it until we can reach a decision as to whether he should return it to you or not.''

It is an elementary principle of law that if one would rescind his contract, he must return or offer to return the consideration which induces its execution. Numerous authorities are cited in the note to § 451 of the chapter on Contracts, 12 Am. Jur., p. 1031, to the effect that the very idea of rescinding the contract implies that what has been parted with shall be restored on both sides, and that releasing one party from his part of the agreement and excusing him from making the other party whole is not agreeable to reason or justice, and that the general rule is therefore that if a party wishes to rescind an agreement he must place the other party in status quo.

We think the decree conforms to the principles of equity and is sustained by testimony and it is therefore affirmed, but since real estate is involved, the cause is remanded to the chancery court with directions to enter a judgment in conformity with the stipulations of the parties.

GRIFFIN SMITH, C. J., dissents.