## COUNTRY GENTLEMAN, INC.
### *v.* Grettle HARKEY

77-419          --          569 S.W. 2d 649

Opinion delivered June 5, 1978
(Division I)
[Rehearing denied September 25, 1978.]

*Little, Lawrence, McCollum & Mixon,* by: *James G. Mixon,* for appellant.

*Oliver L. Adams, Jr.,* for appellee.

GEORGE ROSE SMITH, Justice. The appellant, as the lessee in a 10-year lease upon a restaurant in the city of Rogers, brought this suit for rescission of the lease on the ground that the mere existence of an outstanding mortgage on the leased realty constituted a breach of contract by the lessor. The complaint also sought to recover four items of damages, totaling $58,258.78. In answer to the complaint the lessor also sought a rescission of the lease and damages of $20,000. The chancellor found that the plaintiff was not entitled to rescission, because it knew or should have known of the outstanding mortgage when it entered into the contract. The decree, however, set aside the lease, apparently because both parties sought that relief, and awarded the plaintiff $9,885.88 as damages for breach of contract and $1,900 as excess rent paid into the registry of the court.

For reversal the appellant argues that the decree should be reversed and the cause remanded for the entry of a $54,-417.13 judgment in its favor. We emphasize that this is an "all or nothing" argument. That is, the appellant does not even intimate, much less argue, that the damages awarded by the chancellor should be increased to some intermediate figure between the $9,885.88 allowed and the $54,417.13 requested.

The appellee argues that the decree should be affirmed, because the existence of the outstanding mortgage did not amount to a breach of contract. Alternatively, the appellee asks that the decree be reversed, because the appellant is not entitled to any damages whatever. There is, however, no cross appeal and consequently no basis for affirmative relief in favor of the appellee.

Ordinarily we would first address the question whether the decree should be affirmed on the ground that the appellant is not in any event entitled to damages. Such a discussion, however, would in one respect be futile, because even if we sustained the appellant's argument that the chancellor was right in awarding it *some* damages, we could not possibly sustain the appellant's all or nothing argument that it is absolutely entitled to a money judgment for $54,417.13. We must first explain why this is so.

The appellant arrives at the recited figure by totaling the following elements of asserted damage:

| | |
|---|---:|
| Price paid for restaurant equipment | $ 35,000.00 |
| Rent paid in advance | 2,000.00 |
| Cost of new equipment, less salvage | 6,592.82 |
| Net loss on placemats and guest checks | 938.43 |
| Expenditures allowed by decree | 9,885.88 |
| | $ 54,417.13 |

The various items, however, are not undisputed. For instance, the appellant conceded that the appellee is entitled to a credit of $2,173.80 upon the first item, but that credit is not

included in the tabulation. Furthermore, the appellee denied that the appellant is entitled to recover the entire $35,000 paid for restaurant equipment purchased from her, because she said that all but about $3,000 worth of the equipment had been removed before the restaurant was abandoned by the appellant. We need not discuss the other items. Suffice it to say that the total amount of damages is in sharp dispute and depends to some extent upon the credibility of interested witnesses.

The key question is whether this court, in trying a chancery case de novo, is required to study the appellant's abstract of the record and to make, if justified, modifications in the decree upon grounds *not argued* by the appellant. Certainly no such duty rests upon this court in appeals at law. That is, if the defendant in a personal injury case argues solely that he was entitled to a directed verdict, we do not explore the abstract to be sure that each item of damages awarded by the jury is supported by substantial evidence.

As a practical matter, the same principle must necessarily apply to our de novo review in chancery appeals. Otherwise this situation might occur: The appellant, in a complicated accounting case involving hundreds or thousands of pages of testimony, could simply say in his brief: "The amount awarded to the appellant is inadequate [or the amount awarded to the appellee is excessive]. The court is requested to review the record as abstracted and to enter whatever judgment, favorable to the appellant, is appropriate." Needless to say, such a brief would obviously be contrary to our settled rule that issues not argued by the appellant are waived. See *Fancher* v. *Baker*, 240 Ark. 288, 399 S.W. 2d 280, 16 A.L.R. 3d 1383 (1966), where, in holding that a point for reversal had been waived, we made an observation equally applicable to the case at bar: "Not one line of the brief is devoted to that point."

The precise question was decided, not in so many words but by implication, in our opinion on rehearing in *Cummings* v. *Boyles*, 242 Ark. 923, 415 S.W. 2d 571 (1967). There in our original opinion, 242 Ark. 38, 411 S.W. 2d 665, we had modified the chancellor's decree by awarding the appellant more relief than he had obtained in the trial court. On

rehearing, however, we set aside that modification, because the appellant had not argued that theory as a basis for reversal. Justice Jones, in dissenting to the opinion on rehearing, made this significant statement of his views:

It is my position that when this court tries a case de novo on appeal from a Chancery Court it should do so on the record and not on the briefs.

The majority rejected that view in the *Cummings* case, and we are still of the opinion that our position was right.

Affirmed.

We agree. HARRIS, C.J., and FOGLEMAN and HOLT, JJ.

Concurrence upon denial of
rehearing delivered September 25, 1978

CONLEY BYRD, Justice, concurring. I agree that the decision of the trial court should be affirmed but because I do not agree with the method used to affirm the trial court, I am taking the time to set forth the reasons why the trial court should be affirmed on the merits.

The record shows that the parties entered into a 10 year lease on September 1, 1974 for a going restaurant. The lease contains 30 separate numbered provisions. The provisions upon which appellant relied to rescind the contract for breach of a covenant are as follows:

"7. *TITLE CERTIFICATES.* A. Lessor agrees that she will furnish to the Lessee a certificate of title or a certificate of title insurance certified to by a bonded abstractor or a certified title insurance company showing that she has clear title to the real estate and appurtenances herein leased free and clear of all encumbrances and has a good right to lease said real estate and appurtenances and hereby warrants quiet and peaceful possession during the period of this lease and any extension thereof, by the Lessee upon the performance of the provisions of this lease which are to be performed by the Lessee.

13. *OPTION TO PURCHASE.* Not in lieu of but in addition and supplemental to the rights set forth in Paragraph 12, the Lessee shall have, and is herewith given, the following right and option to purchase all of Lessor's right, title and interest in and to the leased premises:

Lessee may purchase the demised premises at the end of the primary term of this lease for a purchase price of One Hundred Forty Thousand Dollars ($140,000.00) payable in cash on delivery of deed.

The option herein granted may be exercised by Lessee by delivery of sixty (60) days prior written notice to the Lessor of the exercise of the option, and the deposit of ten percent (10%) earnest money to bind the sale.

14. *COVENANT OF TITLE.* Lessor covenants and warrants that it has good title to the property herein leased and that it has good right to lease the premises and will warrant and defend the title thereto, and will indemnify Lessee against any enforcible lien, encumbrance or defect in the title of the property herein leased. Within thirty (30) days after notice of Lessee's exercise of an option to purchase and depositing the earnest money, Lessor shall furnish Lessee with title insurance policy, in Standard form, guaranteeing fee simple title in Grantee. All enforcible liens, encumbrances, restrictions and other defects in title shall be cleared by Lessor promptly on notice from Lessee, except that Grantee agrees to accept title subject to subdivision and deed restrictions and reservations of record, if any, as of this date.

15. *DAMAGE OR DESTRUCTION TO RESTAURANT UNIT.*A. In the event between the date of this agreement and the date Lessee takes possession of said property, any portion of the restaurant is damaged or destroyed by fire or any other casualty and is not restored on or before said date Lessee receives possession, the Lessee may elect to:

1. Terminate this agreement, in which event all

rights and obligations of the parties hereto shall cease and the Lessor shall return to the Lessee the $2,000.00 down payment made by the Lessee at the date of closing,

or

2. Extend the time of taking possession of said property until the same has been rebuilt and is in the same condition as at the time this agreement was executed providing such reconstruction can be completed within a period of ninety (90) days. If said property cannot be restored and reconstructed within a ninety (90) day period, then this lease is automatically ceased and terminated.

29. As a part of the consideration of entering into the above and foregoing lease, the Lessor and Lessee are simultaneously entering into an agreement for the purchase of the restaurant equipment now owned by the Lessor and used in connection with the dining table restaurant located at 832 West Walnut Street in Rogers, Arkansas. The parties have agreed that at the time the original $2,000.00 down payment referred to in paragraph 3, a. of the agreement is paid, it will pay to the Lessor the sum of $35,000.00 and receive a warranty bill of sale to said equipment. This agreement also provides for the operation of said restaurant by the Lessor for a period of thirty (30) days, together with a sixty (60) day remodeling and start up period for the Lessee. If Lessor refuses to comply with the terms of this lease or if the property covered by this lease is damaged or destroyed to such an extent that it is not suitable for use as a restaurant so that the basic ten (10) year lease does not come into actual operation, the Lessor shall not only refund the $2,000.00 down payment above referred to, but will also refund to the Lessee the $35,000.00 paid by the Lessee to the Lessor for said equipment. The refunding of the purchase money for the equipment shall be covered by the provisions of paragraph 15 of this lease."

Appellant in contending that the existence of the $68,-000.00 first mortgage on the premises in favor of American Foundation Life Ins. Co., constituted a breach of the lease

warranting a rescission readily admits that he learned of the mortgage in late September or early October of 1974 from his own insurance agent. The record demonstrates that notwithstanding the existence of this knowledge, appellant took possession of the premises and made substantial repairs to the premises. It was not until March 24, 1975 that appellant removed all of the new equipment purchased by him and demanded a rescission. During the meantime appellant had disposed of approximately 90% of the equipment it had purchased from appellee for $35,000.00. It is also admitted that appellant made the improvements to the property without obtaining the title certificates provided for in item #7, *supra*. There was also evidence that the restaurant had not prospered during the time of appellant's operation. Based upon the evidence presented the trial court ruled that appellant had waived his right of rescission by not taking steps to rescind the lease within a reasonable time. In view of the fact that, by the time of trial, both parties wanted out of the lease, the trial court awarded appellant a judgment for improvements made in the amount of $9,885.80 on the basis that the appellee would otherwise receive an unconscionable windfall. Appellant appeals contending that it was entitled to a rescission as a matter of law under the terms of the contract and that the trial court should have awarded it additional damages in the amount of $35,000 paid for the equipment, the $2,000 down payment on the lease and $6,592.82 for losses between the purchase price and the salvage price of certain equipment it had bought.

For the reasons hereinafter stated, I agree with the trial court.

In the first place, appellant was unable to show that it had sustained any damages as a result of the existence of the mortgage — *i.e.* it speculated that it might not be able to rebuild the premises in the event of a fire loss.

The facts would lead one to believe that knowing all of the facts appellant elected to operate the business until it had the opportunity to determine its profitability. Such conduct on the part of a litigant amounts to a waiver of the litigant's rights to insist upon its right to a rescission. See 17 Am. Jur. 2d Contracts § 489, where it is pointed out that the right to rescind a contract may be lost where there is a ratification or

waiver. As pointed out in *United States* v. *Haynes School Dist. No. 8,* 102 F. Supp. 843 (E.D. Ark. 1951) the right to rescission and restitution is an extreme one and does not arise from every breach. The general rule is that rescission will not be permitted for a slight or casual breach of the contract, but only for such breaches as are so substantial and fundamental as to defeat the object of the parties in making the agreement.

While there is a dispute in the testimony as to whether appellant made a full tender of the $35,000 equipment it purchased from appellee, the preponderance thereof lies in favor of appellee that no such tender was made. Consequently, appellant failed to show that it was entitled to the equitable remedy of rescission. See *Rhodes* v. *Survant,* 209 Ark. 742, 192 S.W. 2d 880 (1946), where it was stated:

> "It is an elementary principle of law that if one would rescind his contract, he must return or offer to return the consideration which induces its execution. Numerous authorities are cited in the note to § 451 of the chapter on Contracts, 12 Am. Jur., p. 1031, to the effect that the very idea of rescinding the contract implies that what has been parted with shall be restored on both sides, and that releasing one party from his part of the agreement and excusing him from making the other party whole is not agreeable to reason or justice, and that the general rule is therefore that if a party wishes to rescind an agreement he must place the other party in status quo."

For the reasons herein stated, I would affirm the trial court's judgment.

HARRIS, C.J., joins in this concurrence.