Gina Felicia FLEMINGS (Foster) *v.* Darryl A. LITTLES

96-293                                                      926 S.W.2d 445

Supreme Court of Arkansas
Opinion delivered July 15, 1996
[Petition for rehearing denied September 9, 1996.*]

*Child Support Enforcement Unit of Pulaski County,* by: *Kimberly D. Burnette,* for appellant.

*The Perroni Law Firm, P.A.,* by: *Samuel A. Perroni,* for appellee.

TOM GLAZE, Justice. This is a paternity case which was first decided on February 4, 1982. On that date, the court entered a final judgment declaring appellee Darryl A. Littles to be the father of appellant Felicia Flemings's (Foster's) infant child. The court ordered Littles to pay $50.00 per month as child support. Almost twelve and one-half years later, August 10, 1994, Littles filed a pro se motion in chancery court, requesting the court to order a paternity test, but Flemings objected, complaining the chancery court lacked jurisdiction to modify the 1982 judgment. The court granted Littles's motion, and upon finding the test excluded Littles as the father, set aside the twelve-year-old judgment. The sole issue on appeal is whether the chancery court had authority to grant

*Brown and Roaf, JJ., would grant.

Littles's motion and later set aside the earlier 1982 paternity judgment. We hold it did not; therefore, we reverse and remand.

Littles cites the case of *Little* v. *Streater*, 452 U.S. 1 (1980), where the Supreme Court held a Connecticut statute unconstitutional because it forced an indigent party seeking a paternity determination to pay the cost of testing. Littles contends that, in applying the *Streater* holding, he, too, was an indigent party when Flemings's paternity suit was filed and decided in 1982, and because of his inability to pay for a test, he was denied due process and "meaningful opportunity to be heard" on the paternity issue.

First, we point out significant procedural differences between the *Streater* case and the case at hand. There, the putative father asserted that he was indigent, and asked that the state be ordered to pay for the paternity tests. The trial court denied the defendant's request, no tests were performed and the court found the defendant to be the father. The putative father in *Streater* appealed the trial court's decision, raising the due process issue he ultimately prevailed on before the Supreme Court.

■ Here, Littles personally appeared at the 1981 county court proceedings, but there is nothing in the record or judgments in that action that shows he ever claimed indigency or asked the state to pay for the paternity test — even though Arkansas's law (unlike Connecticut's statute in *Streater*) permitted such payment by the county. *See* Ark. Stat. Ann. § 34-705.1 (Repl. 1962).[1] Instead, the county court judgment reflects Littles appeared in person, was ordered to deposit the cost of the paternity test and was informed that, if he failed to pay for the test, or if the test failed to exclude him as being the father, paternity would be established and support would be set at $50.00 per month. Accordingly, in its 1982 judgment, the county court found that Littles failed to pay for the paternity test, that he was found to be the infant's father and that he must pay $50.00 per month in child support. Littles filed no timely appeal from that paternity judgment, nor did he file post-trial motions for a new trial. *See Thomas* v. *Easley*, 277 Ark. 222, 640

---

[1] In fact, in the 1994 chancery court proceeding to request a paternity test and to set aside the 1982 judgment, Littles testified that the judge in the original paternity proceeding suggested that Littles should take the test, and Littles said, "I thought I could afford one when I was at the hearing."

S.W.2d 797 ( 1982); *Epperson* v. *Sharp*, 222 Ark. 456, 261 S.W.2d 267 (1953) (court held an appeal from county court in paternity cases must be filed within thirty days). While Littles seeks now, twelve years later, to assert he was indigent and unable to pay for a paternity test in the 1981 and 1982 paternity proceedings, this court has held that it will not go behind a judgment which is valid on its face, to raise such factual issues anew.[2] *Lawrence, Gdn.* v. *Meux*, 282 Ark. 512, 669 S.W.2d 464 (1984).

Consistent with the foregoing analysis, we agree with Flemings's argument that, under Ark. Code Ann. § 9-10-115 (Supp. 1995), the chancellor in these circumstances had no authority to permit Littles to reopen or relitigate the paternity holding and underlying factual issues. Section 9-10-115 provides, in pertinent part, as follows:

> (b) The court shall not set aside, alter, or modify any final decree, order, or judgment of paternity where paternity blood testing, genetic testing, or other scientific evidence was used to determine the adjudicated father as the biological father.

> (c)(1) Upon request for modification of a judicial finding of paternity or a support order issued pursuant to § 9-10-120, *if the court determines that the original finding of paternity* or support order did not include results of scientific paternity testing, consent of the parents, or *was not entered upon a party's failure to comply with scientific paternity testing ordered by the court*, the court shall, upon request when paternity is disputed, direct the biological mother, the child, and the adjudicated or presumed father to submit to scientific testing for paternity, which may include deoxyribonucleic acid testing or other tests as provided by § 9-10-108.

> (2) In no event shall the adjudication or acknowledgement of paternity be modified later than five (5) years after such adjudication or execution of such acknowledgment.

---

[2] The dissenting opinion makes references to Littles as being indigent and to the entering of *ex parte* orders. Suffice it to say, the dissenting opinion reaches conclusions not established by the 1982 judgment, and the dissenting opinion merely raises factual issues which were put to rest by a valid 1982 judgment and proceeding in which Littles appeared and participated.

(Emphasis added.)

■ As discussed previously, the 1982 judgment reflects the county court's original finding of paternity was entered upon Littles's failure to comply with the scientific paternity testing ordered. Thus, under the plain language of § 9-10-115(c)(1), the chancery court had no authority to grant Littles's motion to modify the original judicial finding of paternity.

For the reasons hereinabove, we reverse and remand.

Brown and Roaf, JJ., dissent; Dudley, J., not participating.

Andree Layton Roaf, Justice, dissenting. On July 21, 1981, a warrant was issued for the arrest of the appellee, Darryl A. Littles, as a result of the complaint filed against him by the appellant, Gina Felicia Flemings. The complaint falsely alleged that Littles was the father of Flemings's five-month-old daughter. Flemings and Littles were not married; Littles was nineteen years old, unemployed and living with his grandmother at the time.

A hearing was held on November 16, 1981; Littles appeared at this hearing without counsel. An order was entered on November 31, 1981, which reflected that Littles had been granted until January 16, 1982 to deposit the cost of a blood test with the child Support Enforcement Unit (CSEU) of Pulaski County. The amount to be deposited was not specified in this order. The order further provided that in the event Littles failed to pay by January 16, 1982, paternity would be established and support set at $50 per month.

On January 28, 1982, the paternity referee signed a judgment which established that Littles was the father of Flemings's child. The judgment further stated that Littles had "failed to pay for blood test."

In August 1994, Littles sent a handwritten letter to the chancellor in this case requesting that a blood test be done. He stated in his letter that he "strongly" believed that he was not the father of Flemings's child, and that he did not have the money to pay for the paternity test when it was ordered in 1981. He was charitable to Flemings in his letter; he said that he believed that Flemings had made an "honest mistake" and that only a paternity test could clear up the matter.

The trial court treated this letter as a motion and Flemings,

through the Pulaski CSEU, responded and asserted that because the original paternity judgment was entered "upon defendant's failure to comply with scientific testing," the trial court had no jurisdiction to modify the paternity judgment, pursuant to Ark. Code Ann. § 9-10-115 (1993 Repl).

In this instance, the trial court considered Littles's request for genetic testing more than twelve years after the judgment of paternity was entered in 1981. The chancellor, after a hearing, granted the request; a review of the abstract and record makes it abundantly clear why she did so in this case.

Littles was unemployed at the time of the entry of judgment. He appeared before the court without counsel at the initial hearing held on November 16, 1981. He testified that the hearing "went so quick" and that he agreed to the blood test because he did not believe that he was the father of Flemings's child. However, he was not told by the paternity referee or by the attorney for Flemings how much the test would cost. When he contacted CSEU after the hearing, he was told that he would have to pay the sum of $625 in advance to obtain this test. He could not afford to do so. Littles earned only $90.46 in 1981 and entered the Job Corps in Texas shortly after the initial hearing in November 1981. It is interesting to note that the test finally conducted in 1993 cost him only $238. This test conclusively determined that Littles could not be the father of Flemings's child.

In 1981, Ark. Stat. Ann. § 34-705.1 (Supp. 1985), provided that a trial court could direct that the parties submit to one or more blood tests to determine whether or not a defendant could be excluded as being the father of a child. The statute further provided that the cost of the test "*shall* be taxed as other costs in the case" or, in the court's discretion, "*may* be taxed against the county." *Id.* The statute further stated that whenever the court ordered such blood tests to be taken and one of the parties "shall *refuse* to submit to such tests," such facts shall be disclosed *upon the trial* unless good cause is shown to the contrary. *Id.* The paternity referee obviously did not comply with this statute in any respect when he ordered the paternity testing in November 1981 and entered the judgment of paternity *ex parte* in January 1982. The paternity judgment did not find that Littles refused to submit to the blood test, only that he failed to pay for the test. The paternity referee in 1981 gave an indigent young man, unrepresented by counsel, some sixty days to post the

substantial sum of $625, and entered judgment against him *ex parte* twelve days after he missed the sixty-day deadline.

In her arguments to the trial court, Flemings's counsel acknowledged that the United States Supreme Court had declared unconstitutional a Connecticut paternity statute which required the defendant to pay the costs of paternity testing in advance. *Little* v. *Streater*, 452 U.S. 1 (1981). She further stated that the Arkansas statute in effect in 1981 was constitutional because it provided for taxing the cost of the test to the case. Flemings's counsel conceded to the trial court that Littles "possibly was not given his rights — his due process rights under the statute, but his remedy was to appeal to the Supreme Court." However, she admitted that the file did not indicate that Littles was ever sent a copy of the paternity judgment entered against him.

The trial court found that Littles was precluded in 1981 from the testing due to his age and his inability to pay the cost of the test, and that the statute which required that the State advance the cost of testing was not followed. She set aside the judgment pursuant to Ark. Code Ann. § 9-10-115, which provides that the chancery court may vacate a paternity judgment when the original finding of paternity did not include results of scientific paternity testing or was not entered upon a party's failure to comply with scientific paternity testing ordered by the court.

The trial court determined that Littles's inability to pay for the blood test in advance did not constitute a "failure to comply with scientific testing ordered by the court." We review chancery cases de novo, and reverse only if the chancellor's findings are clearly erroneous. *Perryman* v. *Hackler*, 323 Ark. 500, 916 S.W.2d 105 (1996). Chancellors have broad powers to fashion any remedy that is reasonable and justified by the proof. *Id.* If the paternity referee in 1981 had followed the statute which *mandated* that the cost of blood testing be taxed in the case, no judgment of paternity would have ever been entered against Littles. Under the circumstances of this case, it was not clearly erroneous for the chancellor in 1995 to determine that Littles's inability to make a $625 payment ordered in flagrant violation of Arkansas law did not constitute the "failure to comply" with paternity testing contemplated by Ark. Code Ann. § 9-10-115(c)(1). It is the paternity referee, not Littles, who failed to comply with the paternity-testing statute in 1981. This failure constituted an abuse of discretion, and resulted in a denial of Littles's

right to due process in a very important and quasi-criminal proceeding. I would affirm.

BROWN, J., joins this dissent.