KENNEDY, Justice
(dissenting).
Today, this Court allows a defendant who twice has waived his right to contest a paternity action now to disavow any obligation to the child. I believe this Court is setting a sel." *627 dangerous precedent in bastardizing this child; therefore, I must respectfully dissent.
First, a clarification of the facts is necessary. In 1981, the child who is the subject of this petition was born out of wedlock. E. W. was having sexual relations with the mother around the time the child was conceived. (R.T. 79.) In 1983, the mother filed a paternity action against E. W., alleging that he was the biological father. The court ordered a blood test, noting that E. W. denied paternity and had requested the test. E. W. now claims that he could not afford the test. However, E. W. did not inform the court that he could not afford the blood test. (R.T. 71.) Subsequently, he chose to acknowledge paternity rather than pay for the test or tell the court he was indigent. E. W. admits that he knew that acknowledging paternity meant that he had an obligation to pay child support. (R.T. 78.) E. W. did not appeal from the adjudication of paternity.
E. W. paid little or no child support over the next five years, until an order of income withholding was entered in January 1989. At that time, E. W. moved for a new trial, alleging newly discovered evidence. At that time, E. W. had a well-paying job as an aircraft mechanic, and he hired a well-respected Selma law firm to represent him. In support of his motion, he argued that the mother had claimed someone else was the father. This motion was summarily denied on March 1, 1989. E. W. again chose not to appeal.
E. W. deliberately chose to acknowledge paternity and to support the child rather than to seek the truth when the opportunity was provided. Twice, E. W. was provided with such an opportunity.
I acknowledge that it seems unfair to force a man to pay child support when scientific proof excludes the possibility that the man is the biological father of the child. However, E. W. voluntarily chose to accept the responsibility of being the child’s legal father, regardless of his doubts as to paternity. This voluntary choice resulted in the imposition of certain legal and financial obligations, which E. W. was well aware of when he signed the affidavit acknowledging paternity. The assumption of a parent’s legal and financial responsibilities toward a child is not a matter to be taken lightly, nor is it something to be cast aside when one grows tired of the responsibilities assumed by a deliberate choice. Ex parte Lipscomb, 660 So.2d 986 (Ala.1994) (man was required to pay support for his biological granddaughter because he had sought and obtained legal custody of the child and not because he had a blood kinship or former in loco parentis relationship with the child).
It has always been the law that such a deliberate choice is binding. Ex parte W. J., 622 So.2d 358 (Ala.1993) (man elected not to have blood tests before agreeing to acknowledge paternity and was thereafter bound by the paternity agreement); Ex parte State ex rel. Edwards, 603 So.2d 366 (Ala.1992) (man agreed in open court to legitimate child and was later barred from disputing paternity); Ex parte State ex rel. Milton, 598 So.2d 914 (Ala.1992) (husband did not object to divorce judgment’s order of support for children born dining the marriage and could not later challenge paternity of those children); Ex parte State ex rel. Harrell, 588 So.2d 868 (Ala.1991) (husband acknowledged paternity of child bom during his marriage and could not later challenge paternity).
A man adjudicated to be the father of a child is more than a mere obligated volunteer, such as a stepparent, who may legally abandon the responsibility of a spouse’s minor children that the stepparent has not adopted. Newman v. Newman, 667 So.2d 1362 (Ala.Civ.App.1994).
I note that § 26-17A-1, Ala.Code 1975, was adopted in 1994 to allow a man adjudicated to be the biological father of a child to reopen the question of paternity.[3] This does not mean that such a man can do so if he has failed to timely contest the adjudication of paternity. Refusing to allow E. W. to reopen the question of paternity does not render § 26-17A-1 ineffective. Rather, in this case, *628 by signing the agreement and not having a blood test, E. W. failed to timely contest the question of paternity. An example of when § 26-17A-1 could be properly used would be if paternity was determined before scientific blood tests were available to make such a finding and in the paternity action the alleged father timely contested the claim of paternity but the court nevertheless found him to be the father.
In this ease, E. W., the alleged father, deliberately chose to acknowledge paternity and to support a child that “might” be his biological child rather than seek the truth when the opportunity was provided. When the child’s needs increased, E. W. did not want to continue his legal responsibility and sought to be relieved of his earlier choice. The trial court had no authority to grant E. W. relief. Ex parte State ex rel. J.Z., 668 So.2d 566 (Ala.1995) (man was not entitled to reopen question of paternity, even though blood tests had been requested, but not performed, and lack of tests arose through no fault of alleged father).
In cases involving the welfare of the child, Alabama courts have always focused on the best interests of the child. That “best interests” principle applies to an illegitimate child as well as to a legitimate child. Allowing a man adjudicated, as a result of an earlier choice, to be the father, to set aside that adjudication, when setting it aside would be clearly contrary to the best interests of the child, would shift the focus to the adjudicated father’s interests. I believe such a shift would be improper in a case such as this one, where the alleged father failed to challenge paternity when the paternity action was first brought.
I disagree with the Court of Civil Appeals’ rationale that “equity justifies allowing [E.W.] to assert nonpaternity as a defense” to the mother’s petition to modify the child support order. 695 So.2d at 622. The time for E. W. to contest paternity was when the action was originally filed in 1983, or in 1989 when the income withholding order was entered. Rather than challenging paternity then, E. W. chose to accept the legal and financial responsibilities of paternity. The fact that E. W. made a deliberate choice, considered in light of our concern for the finality of judgments, the best interests of the child, and the public policy of this state against bastardizing children, requires me to conclude that the paternity adjudication should not be reopened.
I would like to note that other jurisdictions, when addressing the reopening of the paternity question when it has been shown that the man adjudicated to be the father is not the biological father, have declined to let the man reopen the question when he has made a deliberate choice otherwise. Wackier v. Ascero, 379 Pa.Super. 618, 550 A.2d 1019 (1988) (prior determination of paternity made in child support proceeding could not be relitigated where the man had failed to challenge the paternity finding and had voluntarily entered into support agreement, even though later blood tests showed he was not the biological father); Robert J. v. Leslie M., 51 Cal.App.4th 1642, 59 Cal.Rptr.2d 905 (1997) (man who stipulated to paternity and was adjudicated to be the father, even though he did not believe he was the father, did not have due process right to declaration of nonpaternity five years after stipulation, even though he was not the biological father); Flemings v. Littles, 325 Ark. 367, 926 S.W.2d 445 (1996) (under statute governing modification of paternity orders, man adjudicated to be the father could not reopen the question of paternity and underlying factual issue whether he had been indigent and unable to pay for paternity testing at the time of the original proceeding).

. Section 26-17A-1, when read in -para materia with the entire Uniform Parentage Act, could also be used by defendant/mothers, plaintiff/mothers, plaintiff/fathers, and children as well, to reopen the issue of paternity in appropriate cases.