Darryl A. LITTLES *v.* Gina Felicia FLEMINGS (Foster)

97-1099                    970 S.W.2d 259

Supreme Court of Arkansas
Opinion delivered June 11, 1998

*Perroni & James*, by: *Samuel A. Perroni* and *Carla Rogers Nadzam*, for appellant.

*Kimberly D. Burnette*, for appellee.

DAVID NEWBERN, Justice. We must decide in this case whether one who has been adjudicated to be the father of a child is entitled to relief from future child-support obligations if scientific testing proves that he is not the child's biological father. We hold that he is. We also hold, however, that in the circumstances presented he is not entitled to relief from his obligation for support already accrued.

Gina Felicia Flemings (now Foster), the appellee, sued Darryl A. Littles, the appellant, alleging that he was the father of her infant daughter. The Chancellor ordered a blood test for which Mr. Littles was to pay. Mr. Littles failed to pay for the test, and it was not conducted at that time. Therefore, the Chancellor entered judgment on February 2, 1982, adjudicating Mr. Littles to be the father of Ms. Foster's daughter, and ordering him to pay $50 per month in child support. Mr. Littles did not appeal from that judgment.

In August 1994, Mr. Littles moved the Chancellor to order a paternity test and asserted that he had been unable to pay for the test ordered prior to the 1982 judgment. His motion was granted in October 1994, and the test proved that he was not the biological father of the child. Citing the test results, Mr. Littles moved the Chancellor in July 1995 to set aside the February 1982 paternity judgment. The Chancellor granted Mr. Littles's motion in November 1995. We reversed in *Flemings v. Littles*, 325 Ark. 367, 926 S.W.2d 445 (1996)("*Flemings I*").

The law applicable in 1995 when the Chancellor set aside the judgment was Ark. Code Ann. § 9-10-115(c) (Supp. 1995). It provided:

(1) Upon request for modification of a judicial finding of paternity or a support order issued pursuant to § 9-10-120, if the court determines that the original finding of paternity or support order did not include results of scientific paternity testing, consent of the parents, or was not entered upon a party's failure to comply with scientific paternity testing ordered by the court, the court shall, upon request when paternity is disputed, direct the biological mother, the child, and the adjudicated or presumed father to submit to scientific testing for paternity, which may include deoxyribonucleic acid testing or other tests as provided by § 9-10-108.

(2) In no event shall the adjudication or acknowledgement of paternity be modified later than five (5) years after such adjudication or execution of such acknowledgement.

We held that the Chancellor had no authority under subsection (c)(1) to order the test in view of Mr. Littles's failure to comply with the original testing order. Perhaps more important, we quoted subsection (c)(2), which precluded any modification of the "adjudication" after the passage of five years.

On September 23, 1996, upon remand, Mr. Littles petitioned to modify the child-support award on the basis of "changed circumstances." Citing Ark. Code Ann. § 9-10-115 (Supp. 1995), he sought modification of the support award, as opposed to modification of the "adjudication" of paternity. He maintained that the support award should be reduced to zero, or to a nominal amount, because (1) the scientific testing proved he was not the child's father; (2) he had married, fathered two children, divorced, and was paying $33 per week in court-ordered support of those children; and (3) he lived with his fiancee and was helping to support her five children.

The Pulaski County Child Support Enforcement Unit ("CSEU"), which had intervened in the case as Ms. Foster's assignee, contested Mr. Littles's petition. The CSEU also sought an increase in Mr. Littles's support obligation, citing his increased wages, and an award for child-support arrearage. Mr. Littles

claimed that Ms. Foster's "unclean hands" barred the requested relief.

In an order filed on May 30, 1997, the Chancellor, relying on the fact that Mr. Littles was supporting his own children, refused to increase Mr. Littles's support obligation to Ms. Foster's child. The CSEU does not appeal that decision.

The Chancellor also denied Mr. Littles's request to reduce the child-support award to zero or a nominal sum on account of the scientific testing that established he was not the child's biological father. The Chancellor stated that she "recognized the inequity" of requiring Mr. Littles "to pay child support for a child that is not his." She held, however, that she was constrained by our opinion in *Flemings I* to deny his request. In addition, the Chancellor ordered Mr. Littles to pay $4,436.50 in child-support arrearage and held that the "unclean hands doctrine," advanced by Mr. Littles, did not apply.

On appeal, Mr. Littles asserts that the Chancellor misinterpreted our decision in *Flemings I* and erred by refusing to reduce or eliminate his child-support obligation on account of the test results. He further claims that the Chancellor should have applied the

Although we affirm the Chancellor's decision with respect to the arrearage, we must reverse the denial of the modification petition. Scientific testing proved that Mr. Littles is not the biological father of Ms. Foster's daughter, and thus he was entitled under Ark. Code Ann. § 9-10-115(d) (Supp. 1995) to relief from any future child-support obligation.

### 1. *Modification of future child support*

A chancery court "always has the right to review and modify child support payments in accordance with changing circumstances and may increase or reduce the payments as warranted in each case." *Thurston v. Pinkstaff,* 292 Ark. 385, 390, 730

S.W.2d 239, 241 (1987). By statute, the Chancellor may modify an award for *future* support, Ark. Code Ann. §§ 9-10-115(a); 9-12-314(b) (Supp. 1997), but she may not "set aside, alter, or modify any decree, judgment, or order which has accrued unpaid support prior to the filing" of the modification petition. §§ 9-12-314(c); 9-14-234(b).

Here, the main "changed circumstance" cited by Mr. Littles in support of his modification petition was the discovery, through scientific testing, that he is not the biological father of Ms. Foster's daughter. His argument, both in the Chancery Court and in this Court, is that the test results entitle him to a modification of the decree relieving him from future child-support obligations. As mentioned, Mr. Littles's petition was filed on September 23, 1996, and the Chancellor's order denying the petition was filed on May 30, 1997. On those dates, the following statute, which is dispositive of this point, was in effect:

> If the court determines, based upon the results of scientific testing, that the adjudicated or presumed father is not the biological father, the court *shall*, upon the request of an adjudicated or presumed father, set aside a previous finding of paternity and *relieve the adjudicated or presumed father of any future obligation of support* or any back child support as authorized under § 9-14-234 as of the date of entry of the order of modification.

Ark. Code Ann. § 9-10-115(d) (Supp. 1995) (emphasis added).

Although a chancellor generally has discretion in support-modification cases, § 9-10-115(d) (Supp. 1995) removes such discretion where the change in circumstances is scientific proof that the "adjudicated father" is not the "biological father" of the child in question. In that situation, the statute *mandates* that an adjudicated father in Mr. Littles's position receive prospective relief from a child-support judgment. Therefore, considering the plain language of § 9-10-115(d) (Supp. 1995), and the unrefuted scientific proof that Mr. Littles is not the biological father of Ms. Foster's child, we hold that the Chancellor erred when she

declined to terminate Mr. Littles's obligation for future child-support payments.

The termination of Mr. Littles's future child-support obligation is not, as the Chancellor seemed to believe, contrary to our decision in *Flemings I*. In that case, as mentioned, we reversed the Chancellor's order setting aside the 1982 paternity judgment, holding that she lacked authority to do so under Ark. Code Ann. § 9-10-115(c) (Supp. 1995). As a result of that decision, the paternity judgment remains extant, and Mr. Littles remains the adjudicated father of Ms. Foster's daughter.

Even an "adjudicated father," however, is entitled by § 9-10-115(d) (Supp. 1995) to relief from future child-support obligations upon scientific proof that he is not the "biological father." Mr. Littles's right to relief under § 9-10-115(d) (Supp. 1995) is unaffected by his status as the "adjudicated father" of Ms. Foster's child or by our holding in *Flemings I* precluding Mr. Littles from having the 1982 paternity judgment set aside.

The dissent contends that Mr. Littles has waived the point on which we reverse by not citing subsection (d) of § 9-10-115 in particular. Although we do not reverse a chancellor's decision on the basis of an argument not raised by the appellant in the trial court and on appeal, Mr. Littles, in his petition for modification, argued that he was entitled to relief from future child-support obligations because scientific testing proved that he was not the child's biological father. That is the very point that Mr. Littles has made on appeal, and it is the point on which we reverse. Although Mr. Littles failed to pinpoint subsection (d) of the statute, he cited § 9-10-115 (Supp. 1995), and we read all of it.

This is not a "*sua sponte* revers[al]," as the dissent claims. A court acts *sua sponte* when it takes action of "its own will or motion; voluntarily; without prompting or suggestion." BLACK'S LAW DICTIONARY 1424 (6th ed. 1990). Our reversal of the Chancellor is "prompted" by the argument that Mr. Littles made below and on appeal and that we determined to be meritorious in light of statutory authority.

We must also reject the dissent's interpretation of § 9-10-115(d) (Supp. 1995) to the effect that the statute does not entitle Mr. Littles to relief from future child-support obligations because he is precluded by our holding in *Flemings I* from having the judgment of paternity set aside. According to the dissenting opinion, the "plain language" of the statute contains a "requirement" that the paternity judgment must be set aside "before" a father in Mr. Littles's position may obtain relief from future child-support obligations. As the paternity judgment against Mr. Littles has not been set aside, the dissent argues, he is not entitled to relief from future child-support obligations.

We have quoted § 9-10-115(d) (Supp. 1995) above in its entirety, and nothing in the text of the statute supports the dissent's proposed interpretation. We observed in *Leathers v. Cotton*, 332 Ark. 49, 52, 961 S.W.2d 32 (1998), that "[t]he first rule in considering the meaning of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language." "[W]here the intention of the Legislature is clear from the words used, there is no room for construction, and no excuse for adding to or changing the meaning of the language employed." *Vault v. Adkisson, Judge*, 254 Ark. 75, 77, 491 S.W.2d 609, 610 (1973)(citing *Berry v. Sale*, 184 Ark. 655, 43 S.W.2d 225 (1931)).

By its terms, § 9-10-115(d) (Supp. 1995) directs the chancellor, upon scientific proof that the "adjudicated or presumed father" is not the "biological father," to do the following two things: (1) "set aside a previous finding of paternity," *and* (2) "relieve the adjudicated or presumed father of any future obligation of support or any back child support as authorized under § 9-14-234 as of the date of entry of the order of modification." Thus, an "adjudicated father" who proves that he is not the "biological father" may receive two forms of relief. He is entitled to have the paternity judgment set aside *and* to be relieved of future child-support obligations. However, nothing in § 9-10-115(d) (Supp. 1995) conditions one's right to relief from a child-support

obligation upon one's ability to have the paternity judgment set aside.

Notwithstanding § 9-10-115(d) (Supp. 1995), we held in *Flemings I* that the Chancellor lacked the authority to set aside the paternity judgment because of the requirements found in § 9-10-115(c). The dissent, however, is incorrect as to the consequences that flow from *Flemings I*. Mr. Littles was precluded from having the paternity judgment set aside, but nothing in § 9-10-115(d) (Supp. 1995) supports the dissent's position that Mr. Littles is therefore precluded from obtaining relief from any future child-support obligation. Only by "adding to or changing the meaning" of the text of the statute, *Vault v. Adkisson, Judge, supra*, could we accept the dissent's position that Mr. Littles's inability to have the paternity judgment set aside means that he cannot be relieved from his future child-support obligations. Our duty is to interpret § 9-10-115(d) (Supp. 1995) "just as it reads," *Leathers v. Cotton, supra*, and thus we must reject the interpretation advanced by the dissenting opinion.

Closing on this point, we note that Ark. Code Ann. § 9-10-115 (Supp. 1995) was amended by Act 1296, § 8, of 1997, and that § 9-10-115(d) (Supp. 1995) has been recodified at § 9-10-115(g)(1) (Supp. 1997). One of the changes effected by the 1997 amendments concerns the point at which relief from the child-support obligation becomes effective. Under § 9-10-115(d) (Supp. 1995), the termination of the support obligation is effective only "as of the date of entry of the order of modification." Under § 9-10-115(g)(1) (Supp. 1997), termination may take effect at an earlier point, *i.e.*, "as of the date of the filing of the motion for modification."

We are obliged in this case to apply § 9-10-115(d) (Supp. 1995) rather than the current version of the statute. The Act containing the 1997 amendments was approved without an emergency clause by the General Assembly. Therefore, the Act did not become effective until ninety days after the adjournment of the legislative session at which it was enacted. *Steele v. Gann,*

197 Ark. 480, 123 S.W.2d 520 (1939); *Gentry v. Harrison*, 194 Ark. 916, 110 S.W.2d 497 (1937); *Jumper v. McCollum*, 179 Ark. 837, 18 S.W.2d 359 (1929). The session in which Act 1296 was approved adjourned on May 2, 1997, and thus the Act took effect on August 2, 1997, well after the filing of Mr. Littles's petition for modification and the order denying it.

We cannot, at this point, apply Act 1296 retroactively to Mr. Littles's benefit. Our duty is to construe statutes "as having only a prospective operation unless the purpose and intention of the Legislature to give them a retroactive effect is expressly declared or necessarily implied from the language used." *Arkansas Rural Med. Prac. Student Loan & Scholarship Bd. v. Luter*, 292 Ark. 259, 262-63, 729 S.W.2d 402, 404 (1987)(quoting *Chism v. Phillips*, 228 Ark. 936, 311 S.W.2d 297 (1958)). We find nothing in the text of Act 1296 to suggest that the General Assembly intended the Act to operate retroactively.

We reverse the Chancellor's order denying Mr. Littles's petition to modify the child-support award and direct the Chancellor upon remand to enter an order pursuant to Ark. Code Ann. § 9-10-115(d) (Supp. 1995) relieving Mr. Littles of any future child-support obligation as of the date of the entry of such order.

## 2. Arrearage

Before discussing Mr. Littles's argument for relief from back child support, we must mention the language of § 9-10-115(d) (Supp. 1995) that required the setting aside of "any back child support as authorized under § 9-14-234 as of the date of entry of the order of modification." Mr. Littles is entitled to no relief from back support pursuant to that provision because § 9-14-234 only allows, as an offset against future child support, any back support that accrued "during time periods, other than reasonable visitation, in which the noncustodial parent had physical custody of the child with the knowledge and consent of the custodial parent." § 9-14-234(c) (Supp. 1995). There is no evidence or contention that Mr. Littles has ever had "physical custody" of the child.

Mr. Littles's assertion is that the Chancellor erred by awarding $4,436.50 in arrearage to Ms. Foster and the CSEU because of Ms. Foster's "unclean hands" resulting from her insistence that Mr. Littles is the father of her child despite the scientific evidence. He also cites her failure to have revealed, until she responded to discovery concerning the current petition, that Mr. Littles's cousin was "possibly" the father of her child.

The "unclean hands" conduct alleged here is not of the sort referred to in *Roark v. Roark,* 34 Ark. App. 250, 809 S.W.2d 822 (1991), cited in support of Mr. Littles's argument on this point. In that case, a former wife frustrated her former husband's right to visitation pursuant to a divorce decree. Nor is the situation here like the other cases in which we have allowed the equitable defenses of estoppel or unclean hands to have an effect on the payment of child-support arrearage when the noncustodial parent's rights under the divorce decree have been frustrated. Those cases are listed and summarized in *Roark v. Roark,* 34 Ark. App. at 255-60, 809 S.W.2d at 825-28 (Rogers, J., dissenting). See also *Stewart v. Norment,* 328 Ark. 133, 941 S.W.2d 419 (1997), in which we discussed the effect of Ark. Code Ann. § 9-14-234 (Supp. 1997), which makes court-ordered child-support payments final judgments as they become due.

■ Mr. Littles argues that Ms. Foster "came into court with unclean hands and committed fraud on the court." Even if Ms. Foster's testimony was false, it was intrinsic fraud and thus not a ground for reversal. *Lee v. Westark Inv. Co.,* 253 Ark. 267, 485 S.W.2d 712 (1972); *Croswell v. Linder,* 226 Ark. 853, 294 S.W.2d 493 (1956). *See Sumter v. Allton,* 278 Ark. 621, 648 S.W.2d 55 (1983).

Affirmed in part; reversed and remanded in part.

BROWN, J., concurs.

GLAZE and IMBER, JJ., dissent.

ROBERT L. BROWN, Justice, concurring. Both the majority opinion and the dissent make the point that in *Flemings v. Littles,*

325 Ark. 367, 926 S.W.2d 445 (1996) (*Flemings I*), the issue of Littles's paternity was decided against him, and that decision is law of the case. I joined a dissenting opinion in *Flemings I* because I was convinced that Littles did not have a blood test done in 1982 to establish paternity because he did not have the wherewithal to pay for it. The trial court found this to be the case in *Flemings I. See Flemings I, supra* (Brown and Roaf, JJ., dissenting). Of course, when DNA testing was eventually done, it proved conclusively that Littles was not the child's father. I continue to adhere to that dissent and believe that the adjudication of his paternity was wrong. Hence, Littles should have no obligation to pay child support. For that reason alone, I concur with the result reached in the majority opinion.

ANNABELLE CLINTON IMBER, Justice, dissenting. Although I agree with that part of the majority opinion which addresses Mr. Littles's unclean-hands argument, I must respectfully dissent from that part of the opinion which addresses the modification of future child support. Neither party, either below or on appeal, has ever cited or argued Ark. Code Ann. § 9-10-115(d) (Supp. 1995), upon which the majority relies to reverse the Chancellor's order denying Mr. Littles's petition to modify the child-support award. Rather, the majority has *sua sponte* reversed on a ground not argued by appellant. In *Cummings v. Boyles*, 242 Ark. 923, 415 S.W.2d 571 (1967) (Supp. op. den. reh'g) (*per curiam*), this court reiterated that, although chancery cases are tried *de novo*, we do not reverse an order upon a statutory ground not argued by appellant. *See also Country Gentleman, Inc. v. Harkey*, 263 Ark. 580, 569 S.W.2d 649 (1978). Mr. Littles failed to cite or argue section 9-10-115(d), and thereby waived that point for reversal. The observation made by this court in *Fancher v. Baker*, 240 Ark. 288, 399 S.W.2d 280 (1966), is equally applicable to this case: "Not one line of the brief is devoted to that point[.]"

In any event, the majority's application of section 9-10-115(d) to this case ignores that statute's requirement that the previous finding of paternity must be set aside before the "adjudicated" father is entitled to relief from future child-support

obligations: "the court *shall*, upon the request of an adjudicated or presumed father, set aside a previous finding of paternity *and* relieve the adjudicated or presumed father of any future obligation of support . . . ." Ark. Code Ann. § 9-10-115(d) (Supp. 1995) (emphasis added). In fact, the majority properly notes that the parties have not asked this court to reconsider *Flemings I*, in which we held that the chancellor lacked authority to set aside the 1982 paternity judgment. I agree with the majority that "the paternity judgment remains extant, and Mr. Littles remains the adjudicated father of Ms. Foster's daughter." *Flemings I* is the law of the case and the parties have not asked us to reconsider the *Flemings I* decision. *See Vandiver v. Banks*, 331 Ark. 386, 962 S.W.2d 349 (1998) (decision on first appeal is conclusive of every question of law or fact decided on former appeal); *Larimore v. State*, 317 Ark. 111, 877 S.W.2d 570 (1994) (same).

Pursuant to section 9-10-115(d), the previous finding of paternity must be set aside in order for Mr. Littles to be entitled to relief from future child-support obligations. Mr. Littles's previous paternity judgment should not be and is not set aside by the majority opinion. Therefore, Mr. Littles is not entitled to relief from future child-support obligations under the plain language of section 9-10-115(d).

Because I would affirm the Chancellor's order denying Mr. Littles's petition to modify the child-support award, I must respectfully dissent.

Glaze, J., joins in this dissent.