[No. 1557.]
## GOTTLIEB v. BARTON.

1. APPELLATE PRACTICE—PARTIES.

In an action for damage for wrongful conversion of property, where a third party intervened claiming the property and a judgment was rendered in favor of the intervenor and against the plaintiff, but no judgment was rendered either for or against the defendant, on error to the court of appeals by plaintiff, the defendant is a stranger to the proceedings in the court of appeals and not entitled to recognition in the discussion of questions before the court.

2. PRACTICE—PARTIES—JUDGMENTS.

In an action for damage for wrongful conversion of property, where a third party intervened claiming the property, and the jury returned a verdict awarding the possession of the property to intervenor, and assessed the value of the property without any finding against either the plaintiff or defendant specially, a judgment in favor of the intervenor and against the plaintiff for the value of the property was erroneous. It did not follow the verdict and was against a party who had incurred no liability to the intervenor since it was admitted that the property was in possession of the defendant.

3. ATTACHMENT—PERSONAL PROPERTY.

Personal property capable of manual delivery can be attached only by being taken into custody by the officer. An attempted levy of an attachment upon personal property, capable of manual delivery, where the property was left in the custody of the defendant, and was not separated from defendant's other property, was not such levy as would give the attaching creditor or the officer any right in the property.

4. ATTACHMENT—RETURN—EVIDENCE.

The return of the officer upon a writ of attachment is the record of the levy, and is the legal evidence of the fact that the levy was made. It cannot be proved by parol evidence.

5. ATTACHMENT—POSSESSION—ESTOPPEL.

Where an officer executing a writ of attachment left the property in the possession of, and mingled with other goods of, the attachment defendant, so that to persons dealing with the attachment defendant he appeared to be the owner of the property, the officer is estopped from asserting any interest in the property as against one who loaned money to the defendant on the property on the faith of his apparent ownership, notwithstanding the attachment creditor may have recovered judgment against the officer for the value of the property.

, *Error to the District Court of Arapahoe County.*

Messrs. WELLS, TAYLOR & TAYLOR, for plaintiff in error.

Mr. CHAS. J. HUGHES, Jr., and Mr. TYSON S. DINES, for defendant, the Denver Transit and Warehouse Company.

No appearance for defendant in error, Barton.

. THOMSON, P. J.

On the 24th day of October, 1891, F. A. Moore delivered to the Denver Transit and Warehouse Company certain articles of personal property for storage, and received from the company a warehouse receipt of which, with the memorandum on its margin, the following is a copy:

"The annexed Receipt may be transferred by endorsement (unless the words 'Not Negotiable' shall be written or stamped on the face thereof) and any person to whom the same may be transferred will be deemed and taken to be the owner of the property therein specified; and no property can be delivered except on the surrender and cancellation thereof. This Company does not insure against fire.

" All storage Bills Must be Settled Quarterly.
"No. 1773.

DENVER, COLO. Oct. 24, 1891.
" Received on storage by The Denver Transit & Warehouse Company, warehouse, 1411 Wynkoop street, account of F. A. Moore.

    1–4 Seat Drag, 1 pole, 5 cushions.
    1 Top Buggy, 1 pr. shafts, no "
    1 Road Wagon, 1 pr. " 1 "
    1 Business " 1 pr. " 1 "
    Amount advanced . . .
    Interest . . . . .
    Cartage . . . . .
    Storage per month, $4.
    From date.
    Labor . . . . . .
    "THE DENVER TRANSIT & WAREHOUSE COMPANY.

        " Per A. W. SNYDER."

Afterwards, in consideration of money loaned to Moore by Joseph Gottlieb, and as security for the repayment of the loan, Moore transferred the warehouse receipt to Gottlieb by the following indorsement on the back of the paper : " For value received, I hereby assign & transfer & sell unto Joseph Gottlieb, for value received, the within receipt & chattels. F. A. Moore." After the assignment of the receipt to him, and on the 25th day of March, 1892, Gottlieb paid to the company the amount due on account of storage of the property to that date. This suit was brought by Gottlieb against the warehouse company to recover damages for the wrongful conversion of the property by the company. The complaint alleged the loan to Moore ; the assignment by Moore of the warehouse receipt to the plaintiff as security for the loan ; the payment by the latter of all charges for storage ; the non-payment by Moore of the money loaned to him ; a demand of the property made upon the defendant by the plaintiff, accompanied by the offer of the plaintiff to surrender and cancel the warehouse receipt, and the refusal of the defendant to deliver him the goods. He averred his damage by reason of the conversion to be $2,000 for which he demanded judgment. The defendant answered, denying the several allegations of the complaint, and alleging that the goods were not the property of F. A. Moore, but were stolen by the latter from Elias R. Barton, who was their true and lawful owner. It was further averred that when the defendant received the goods, it was ignorant of the manner in which they came into possession of Moore, and of his want of title to them ; that since the issuance of the receipt, it had been informed of the facts concerning the ownership of the property, and that for the reason that the goods had been stolen by Moore, it had refused to deliver them to the plaintiff.

The replication averred that the defendant was estopped to say that the plaintiff was not entitled to the goods, because, first, the plaintiff, knowing nothing concerning the matters alleged in the answer, advanced the money on the faith of the warehouse receipt, and second, the defendant, after being

informed of those matters, failed within a reasonable time to notify the plaintiff of the facts, and, by reason of such failure, the plaintiff lost his remedy against Moore, the latter having removed from the state, taking his money and property with him.

After the filing of the foregoing pleadings, Elias R. Barton presented a petition in intervention, in which he set forth that on May 27, 1891, he was the sheriff of Arapahoe county; that on that day, by virtue of a writ of attachment, issued out of the county court of Arapahoe county, in an action between Abraham F. Resser, plaintiff, and Fannie McCauley, defendant, he seized the property and took it into his possession; that, at the request of Resser's attorney, he appointed F. A. Moore its custodian; that he left the goods where he found them when he made the levy, in the possession of Moore; that Moore without his knowledge removed them to the defendant's warehouse, stored them as his own property, and took a warehouse receipt in his own name; that one Laws, who was the true owner of the goods, demanded them from him, but that he was unable to deliver them, and Laws brought suit against him for their conversion, and recovered judgment for their value. He asked to be adjudged the owner of the goods and awarded their possession. The plaintiff moved the court to strike this pleading from the files, but the motion was denied. The defendant then answered the petition, denying the alleged levy, denying that Moore was custodian, and admitting the remaining allegations. The plaintiff, by answer, averred that he loaned the money to Moore, and accepted the warehouse receipt, on the faith of the apparent ownership of the goods by Moore, and in the belief that he was the owner. The jury found for the intervenor, that he was entitled to the possession of the property, and that its value was $250. After an unsuccessful motion by the plaintiff for a new trial, on the ground, among others, that the verdict was not warranted by the evidence, the court entered judgment in favor of the intervenor and against the plaintiff for $250. As between the plaintiff and the defend-

ant, or as between intervenor and the defendant, there was no judgment, and except as between the intervenor and the plaintiff, the case is still pending in the court below.    The intervenor has entered no appearance in this court.    A brief has been filed in behalf of the defendant, but as no judgment has yet been rendered for or against it, and as there is no judgment before us for review, except that against the plaintiff and in favor of the intervenor, the defendant is a stranger to the proceedings in this court, and is entitled to no recognition in the discussion of the questions upon the disposition of which our own judgment will depend.

The ground of the motion to strike out the petition in intervention was that it did not appear that Barton was entitled to intervene, or that he had any interest in the matter in litigation, or in the success of either of the parties.    This is an action for damages for a wrong, and it is, perhaps, true, that in such a case an intervention is not authorized by the code ; but as plaintiff's counsel have not seen fit to notice the question in their argument, we shall devote no time or labor to its investigation.    We may say, however, that the result of our examination of the record is that it is a matter of very little importance whether the intervention was proper or not.

Before looking into the case which the intervenor made by his evidence, we deem it well to say that the judgment entered by the court finds no warrant either in the petition or the verdict.    It was a judgment against the plaintiff alone. The petition averred that Laws was the owner of the property, and claimed that Barton succeeded to his title by subrogation.    It showed that the possession of the goods was in the defendant.    While the petition may have been sufficient to support a judgment that Barton was entitled to the property, it did not contain a single allegation which, as to him, would place the plaintiff in the attitude of a wrongdoer, or give him the right, as against the plaintiff, to a judgment for money, or any judgment at all, except, possibly, that he was entitled to the possession of the goods, and if the property had been adjudged to him, it was by the defendant, and not

by the plaintiff, that the possession must have been delivered. By their verdict the jury awarded the possession to the intervenor, and assessed the value of the goods at $250. There was no finding against the plaintiff specially, or against the defendant specially. The judgment did not follow the verdict; it had no support in the petition, and it was against a party who had incurred no liability to the petitioner.

But we do not propose to rest contented merely with a condemnation of the form or character of the judgment. Upon the evidence, the intervenor was entitled to no judgment of any kind against any person. The only witness for the intervenor was M. J. Casey, who was his deputy, and to whom the writ of attachment was delivered for service. Neither the writ, nor the return upon it, was in evidence. Over the objection of the plaintiff, Casey was permitted to testify that, as deputy sheriff, he had the goods in his possession. What the nature of his possession was, or in what manner he levied the writ, he did not state. It is provided by code section 104 that personal property capable of manual delivery shall be attached by taking it into custody. The goods in question were carriages and other like vehicles. It appears from the testimony of the witness that he found the property in the possession of Moore, who was the proprietor of a carriage shop; that there was a large number of other vehicles in Moore's place of business, and that he appointed Moore custodian of the articles in controversy. It does not appear that he ever separated these from the others, or even touched them, or that he ever had any possession distinct from Moore's possession. Upon the only evidence touching the question, which the record contains, there was no such levy as gave the intervenor any right in the goods. *Crisman v. Dorsey*, 12 Colo. 567. But it is provided by section 114 of the code that the sheriff shall return the writ of attachment within twenty days after its receipt, with a certificate of his proceedings indorsed thereon, or attached thereto, making a full inventory of the property attached as part of his return upon the writ. The return is the record of the levy, and is the

legal evidence of the fact that the levy was made. Matter of record cannot be proved by parol, and the return upon this writ was not offered. However, we find in the bill of exceptions a statement, made at the trial, in open court, by the attorney who was managing the case of the intervenor that the return on the writ showed only a levy on real estate; so that the claim of the intervenor, in so far as it is based upon a levy on these goods, falls to the ground.

But this is not all. It clearly appears that these goods were left mingled with the other goods of Moore in such manner that to persons dealing with Moore he appeared to be their owner. Moore was conducting a carriage business, and the public had no means of knowing that he had not the same right to dispose of every article in his possession. When the defendant received the goods from him, it had no suspicion that he was not their absolute owner. When the plaintiff loaned him the money, he examined the property in the defendant's warehouse, and visited the carriage works, and saw nothing to suggest to him that any of the property at either place was not Moore's. Whether Laws was in fact the owner of the property, or any of it, or recovered a judgment against the intervenor for its value, is immaterial. That Moore was clothed with the apparent ownership of these goods, was due to the gross negligence of the intervenor, and the latter having put it into Moore's power to practice the deceit of which the plaintiff was the victim, cannot now be heard to assert an interest in the property, on the faith of Moore's ownership of which, the plaintiff parted with his money. The foregoing observations apply only to the record as we have it. What the intervenor may be able to prove upon another trial, of course we do not know.

The judgment will be reversed.

*Reversed.*