## No. 12,177.

### JUSTICE, SHERIFF *v.* HOCH.

Decided October 29, 1928.   Rehearing denied November 26, 1928.

Messrs. PELTON & CHUTKOW, for plaintiff in error.

Mr. M. M. BULKELEY, Mr. FRANK D. ALLEN, for defendant in error.

*Department One.*

Mr. Justice Walker delivered the opinion of the court.

Plaintiff in error as sheriff of Washington county, brought this action against the defendant in error, alleging that on February 4, 1927, the plaintiff, through his deputy, levied upon and took into his possession, two grain drills; and that while the plaintiff was in possession under the levy, the defendant, on February 21, 1927, took the grain drills and converted them to his own use. The answer of the defendant, besides denials, set up an affirmative claim of title to the property under a bill of sale. Upon the trial, the court below sustained, at the conclusion of plaintiff's evidence, defendant's motion for a nonsuit. To review that ruling this writ of error is prosecuted and supersedeas requested.

The facts disclosed by the evidence were substantially as follows: The grain drills in question were originally owned by the Otis Milling Company, a corporation. The drills were stored by that company in a tin building located 200 feet south of the company's mill, and beyond an intervening public highway. The tin building was owned by T. P. Rehder, who appears to have been the manager of the milling company, but it was situated on land owned by the milling company. In the tin building were other articles of personal property, some of which belonged to the company and others to Mr. Rehder. J. A. Clayton, one of the witnesses for the plaintiff, and the deputy sheriff who made the levy, testified concerning this building: "Q. Do you know what this building was used for in connection with the Otis Milling Company? A. I do not know of anything else except that it was used as a machine shed for machinery that they were selling. Machinery was stored in there."

On January 14, 1927, the milling company gave a bill of sale, which included the grain drills, to the defendant, in consideration of which the defendant gave the com-

pany credit on a note which it owed him. Defendant did not however at that time remove the drills, or take any possession of them. On January 21, 1928, the Metropolitan Industrial Company, a corporation, recovered judgment against the Otis Milling Company, and on January 29th, writ of execution was issued thereon, and placed in the hands of the sheriff on January 30th. On February 5th, the deputy sheriff went with this writ to the premises of the milling company. He had previously been informed that Hoch claimed the grain drills under his bill of sale. He found the door to the tin building unlocked, went inside, handled the grain drills, made up descriptions thereof, and then went outside and tacked up a notice of levy (including articles besides the drills, located in the main building) on the tin building, around the corner from the door. The grain drills were not removed from the tin shed, nor was any custodian left in their charge, nor was any lock or barrier of any kind placed upon the door. There was also testimony that it would have required three men to remove the drills from the shed. Mr. Rehder was informed later by the sheriff that he had levied upon the goods. About two weeks later the defendant removed the grain drills under the bill of sale. There is some evidence to show that at the time he did so he knew of the attempted levy, although he testified he did not see the posted notice.

The court below was of the opinion that the evidence was insufficient to show a completed levy, and it was for this reason that he directed a nonsuit. The sheriff contends in this court, not only that the levy was sufficient, but that, irrespective of its sufficiency, he was entitled to prevail in this action because the delivery to him of the writ of execution gave him a lien upon the property under our statute which took effect prior to the seizure of the property by the defendant, and which could not be lost by an insufficient levy not connived at by the execution creditor. Of this latter contention we may dispose, by consideration of the nature of the action, and of the

scope of the lien created by the delivery of the writ. If the action be regarded as in the nature of trover, a special or general property in the goods, or a right to possession, is essential to its maintenance; or if it be regarded as in the nature of trespass de bonis, the plaintiff must show a possessory right to the goods. The lien given by the statute, like the lien of the writ at common law, does not clothe the officer with any property, special or general, nor with any present possessory right, until a valid levy has been made under the writ. The effect of the lien is merely to invest the officer to whom it is delivered, with the right to seize the property, by levy, in the hands of persons taking it after he receives the process. But before the making of the levy he can not maintain either trover or trespass in respect to the goods. Freeman on Executions (3d Ed.), Vol. 2, p. 1003; *Hathaway v. Howell,* 54 N. Y. 97; *Wright v. Morley,* 150 Mass. 513, 23 N. E. 232; *Mulheisen v. Lane,* 82 Ill. 117.

It is apparent from the evidence in this case that after the attempted levy had been made no change in the possession, custody or control of the goods had been accomplished. The property remained as before, in the building which was under the control of the judgment debtor. Not only did the building remain as before, accessible to the debtor, but indeed, unless prevented by it, accessible to any one who chose to enter. No custodian was left in charge by the officer. No arrangement was made with the milling company that it should thereafter hold the goods for the sheriff. At the common law, according to the authorities, the officer would enter the premises on which the goods were, and leave one of his assistants in possession of them, or would cause an inventory to be taken, and remove them. 17 R. C. L. 179, and cases there cited; also *Dixon v. Sewing Machine Co.,* 128 Pa. St. 397, at page 405, 18 Atl. 502, 5 L. R. A. 659. Our statute does not prescribe the method of levying a writ of execution, and counsel for plaintiff in error are right in saying that *Crisman v. Dorsey,* 12 Colo. 567, 21 Pac. 920, 4 L. R. A.

664, and other decisions under our attachment act, which specifically requires that goods capable of manual delivery shall be taken into the officer's custody, are not strictly controlling here. Nevertheless, under the most liberal view of the modern nonstatutory requirements, we do not think that a valid levy may be made under a writ of execution, as against third persons, where no change, either actual or constructive, is wrought in the possession, custody or control of the goods claimed under the levy. Among other essentials of the execution of the writ is the following, as stated in 23 C. J., at page 437, in virtually the same language as is used by Chief Justice Shaw in *Hemmenway v. Wheeler,* 14 Pick. 408: "In general, it may be said that the levy shall be such a custody as to enable an officer to retain and assert his power and control over the property, so that it cannot be withdrawn or taken by another without the officer knowing it."

Substantially the same language is adopted by Freeman in his work on executions, at page 1454, Vol. 2 (3d Ed.), and numerous authorities are cited by him in support of it. In *Davidson v. Waldron,* 31 Ill. 120, it is said, in stating the holding of a prior Illinois decision: "To constitute a valid levy, the property must be within the power and control of the officer when it is made, and he must take it into his possession in a reasonable time thereafter, and in such an open, public and unequivocal manner, as to apprise everybody that it has been taken in execution."

The Illinois court further says: "We believe all courts hold a levy should be indorsed on the fi. fa., and that the property should be in the view and under the control of the officer at the time he makes it, and he should, in a reasonable time after the levy is made, take possession of the property." Tested by these rules, the levy attempted in the present instance was not complete.

But plaintiff in error says that his levy was sufficient under the holding of this court in the case of *Bank v.*

*Hardware Co.,* 75 Colo. 440, 226 Pac. 154. There a levy was sustained where the officer went upon a farm, and, having certain livestock and farming implements in his view, announced that he levied upon them, and constituted one of the judgment debtors his custodian to hold them under the writ. In the opinion in that case Mr. Justice Campbell said: ''The weight of authority is that leaving the property with the judgment debtor does not of itself invalidate the levy. Seizure under the writ must be either actual or constructive, but physical or manual seizure is not essential. The property levied upon must be within the view of the officer and subject to his control at the time and he must manifest his dominion over it.''

In the instant case, however, the milling company was not constituted custodian. Such seizure as there was, was actual, not constructive; but it was not maintained for an instant after the officer left the premises, nor were any arrangements made or contemplated to so maintain it.

It is also argued by plaintiff in error that his levy met the test laid down by some of the authorities, that the officer must do some act which would constitute him a trespasser except for the protection of the writ. From this, however, it does not follow that any act which would constitute a trespass, but for the writ, is in all cases a sufficient levy.

The judgment is affirmed.

MR. CHIEF JUSTICE DENISON, MR. JUSTICE BURKE, and MR. JUSTICE WHITFORD concur.