**CF & I STEEL, L.P., d/b/a Rocky Mountain Steel Mills, Petitioner–Appellant and Cross–Appellee,**

v.

**AIR POLLUTION CONTROL DIVISION, Colorado Department of Public Health and Environment, State of Colorado, Respondent–Appellee and Cross–Appellant,**

**and**

**United Steel Workers of America, AFL–CIO/CLC, Respondent–Intervenor–Appellee and Cross–Appellant.**

No. 02CA0715.

Colorado Court of Appeals, Div. II.

Aug. 14, 2003.

Dufford & Brown, P.C., Herbert A. Delap, Eugene F. Megyesy, Joanne Herlihy, Denver, Colorado, for Petitioner–Appellant and Cross–Appellee.

Ken Salazar, Attorney General, Garrison W. Kaufman, Assistant Attorney General, Denver, Colorado, for Respondent–Appellee and Cross–Appellant.

Santarella & Eckert, LLC, Susan J. Eckert, Joseph M. Santarella, Jr., Littleton, Colorado, for Respondent–Intervenor–Appellee and Cross–Appellant.

Opinion by Judge CARPARELLI.

Petitioner, CF & I Steel, L.P., d/b/a Rocky Mountain Steel Mills (RMSM), appeals a permanent injunction that directed respondent, the Air Pollution Control Division of the Colorado Department of Public Health and Environment (the Division), to disclose to intervenor, United Steel Workers of America, AFL CIO/CLC (the Union), approximately 760 pages of documents RMSM had previously provided to the Division. The Division and the Union cross-appeal a portion of the same order in which the court permanently enjoined the Division from disclosing the remaining documents to the Union. We affirm.

In June 2001, enforcement agents of the Division visited RMSM's steel-making facility to conduct a records inspection pursuant to the Colorado Air Pollution Prevention and Control Act, § 25–7–101, et seq., C.R.S.2002. RMSM permitted the agents to conduct the inspection, under threat of the execution of search warrants, and ultimately produced to the Division approximately 3,343 pages of documents. RMSM informed the Division that it was asserting business confidentiality regarding all the documents.

The Union later asked the Division for permission to review the produced documents, pursuant to the Colorado Open Records Act, § 24–72–201, et seq., C.R.S.2002 (CORA). The Division notified RMSM that it had concluded that, with a few exceptions, there was not sufficient basis to find that the documents were confidential under the confidentiality exception in CORA. *See* § 24–72–204(3)(a)(IV), C.R.S.2002 (the right of inspection shall be denied for "[t]rade secrets, privileged information, and confidential commercial, financial, geological, or geophysical data"). Accordingly, it advised RMSM that it would make the documents available for the Union's review unless RMSM gave the Division "specific justification" for its claims of confidentiality with respect to each document. In response, RMSM filed with the

court a petition for a protective order to prevent the disclosure of the documents.

At the conclusion of the preliminary injunction hearing, the court ruled that approximately 760 pages of documents constituted "emission data" and that, in accordance with § 25–7–132, C.R.S.2002, the Division was required to disclose them regardless of whether they contained confidential business information. The court also ruled that the affidavit and testimony of RMSM's general manager provided sufficient evidence to show that approximately 850 pages of the documents were confidential. Therefore, the court enjoined the Division from disclosing those documents until the matter could be tried.

After a three-day trial, the court entered a permanent injunction. The court ruled that: (1) approximately 760 pages of documents constitute "emission data," within the meaning of § 25–7–103(11.5), C.R.S.2002, and must be disclosed to the Union; (2) documents listed in Exhibit A of the order must be disclosed because RMSM agreed that they were not confidential; and (3) the remaining documents, approximately 2,500 pages, were not public records as defined by CORA or, alternatively, "contain sensitive financial-commercial-trade secret information within the meaning of" the confidential records exception. Accordingly, the court required disclosure of the 760 pages of emission data and the documents listed in Exhibit A, but it permanently enjoined the Division from disclosing the 2,500 pages of documents.

This appeal and cross-appeal followed.

## I.

The Division and the Union first contend that the trial court erred when it applied a de novo standard of review to RMSM's request for injunctive relief. They assert that the Colorado Administrative Procedure Act, § 24–4–101, et seq., C.R.S.2002 (CAPA), required the trial court to apply a deferential arbitrary and capricious standard to the Division's initial determination that the documents should be disclosed absent a showing by RMSM of confidentiality. We disagree.

CORA specifically states that a party that is denied access to documents has the right to bring an action in district court to challenge that denial. Section 24–72–204(5), C.R.S.2002. However, the parties agree that CORA does not address the options available to a party that is challenging an agency's decision to grant a third party access to documents.

CAPA states that "any person adversely affected or aggrieved by any agency action may commence an action for judicial review in the district court." Section 24–4–106(4), C.R.S.2002. An "action" includes "any agency rule, order, interlocutory order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." Section 24–4–102(1), C.R.S.2002. Any "action" that constitutes "final agency action" must include a list of all parties to the "agency proceeding." Section 24–4–102(1). A "proceeding" is "any agency process for any rule or rule-making, order or adjudication, or license or licensing." Section 24–4–102(13), C.R.S.2002.

Under CAPA, a reviewing court may not reverse an agency action unless the court finds it to be arbitrary and capricious or contrary to rule or law. Section 24–4–106(7), C.R.S.2002.

At the preliminary injunction hearing, the trial court ruled that it was "not appropriate" for it to review the Division's determination. Instead, the court applied the standard for preliminary injunctions pursuant to C.R.C.P. 65(a) and *Rathke v. MacFarlane*, 648 P.2d 648 (Colo.1982)(providing six factors related to the issuance of a preliminary injunction).

■ On this record, we conclude that the Division's determination regarding whether the documents here contained confidential information within the meaning of § 24–72–204(3)(a)(IV) did not constitute an adjudicatory agency action of the kind addressed in CAPA. *See* § 24–4–105, C.R.S.2002.

Therefore, we reject the Division's and the Union's claims that RMSM's petition should be construed as a review of an agency action under CAPA. Instead, we conclude that the court was deciding the dispute between these parties in the first instance and, therefore, that the court properly resolved the dispute

in accordance with the standards applicable to injunctive relief. *See* C.R.C.P. 57, 65.

## II.

RMSM's primary contention is that the trial court erred when it ruled that 760 pages of documents constitute "emission data" and thus must be disclosed. Specifically, it asserts that documents that pertain to the "operation or state of the pollution control equipment" and to "operational charges [sic] or modifications at the facility" are not emission data. We are not persuaded.

Under CORA, the custodian of the records must deny the right of inspection for trade secrets, privileged information, and confidential data "unless otherwise provided by law." Section 24–72–204(3)(a), C.R.S.2002; *see Bodelson v. City of Littleton,* 36 P.3d 214 (Colo. App.2001).

The Colorado Air Pollution Prevention and Control Act requires that "all emission data received or obtained by the ... division shall be available to the public to the extent required by the federal [Clean Air Act]." Section 25–7–132.

Section 25–7–103(10), C.R.S.2002, defines emission as the "discharge or release into the atmosphere of one or more air pollutants." As relevant here, § 25–7–103(11.5)(a) and (b) define emission data as including the following information related to any source of emission of any substance into the air:

(a) Information necessary to determine the identity, amount, frequency, concentration, or other characteristics (to the extent related to air quality) of any emission which has been, or will be, emitted by the source (or of any pollutant resulting from any emission by the source), or any combination thereof;

(b) Information necessary to determine the identity, amount, frequency, concentration, or other characteristics (to the extent related to air quality) of the emission which, under an applicable standard or limitation, the source was authorized to emit (including, to the extent necessary for such purposes, a description of the manner or rate of operation of the source), or any combination thereof.

RMSM contends that the definition of emission data is limited to factual information that forms the basis of a scientific or systematic calculation of emissions. In essence, RMSM asserts that the information collected must be used to calculate a numerical indication of an emission—for example, the information reported on the "Air Pollution Emission Notice" filed monthly by the facility with the Division.

■ Section 25–7–103(11.5)(b) defines emission data to include "information necessary to determine the identity, amount, frequency, concentration, or other characteristics" of the emission. *See generally* 56 Fed. Reg. 7042 (Feb. 21, 1991). This definition does not limit emission data to numeric information from which calculations can be made. Instead, it includes all information, including nonnumeric descriptions, from which various aspects of emissions may be "determined." Moreover, the latter interpretation of the definition of emission data is consistent with the statute and the explicit exception for emission data found in the federal Clean Air Act. *See Natural Res. Def. Council, Inc. v. United States Envtl. Prot. Agency,* 494 F.2d 519 (2d Cir.1974).

■ RMSM also challenges the trial court's reliance on a Division inspector's conclusions regarding emission data rather than that of RMSM's experts. However, the evaluation of credibility of witnesses, including expert witnesses, is a matter solely within the fact finding province of the trial court, and we decline to disturb the trial court's ruling. *Cherry Hills Country Club v. Bd. of County Comm'rs,* 832 P.2d 1105 (Colo.App. 1992); *see also Nat'l Adver. Co. v. Dep't of Transp.,* 932 P.2d 871 (Colo.App.1997)(the construction of statutes by administrative officials charged with their enforcement should be given deference).

## III.

In its cross-appeal, the Union contends that the trial court erred when it entered a permanent injunction that protected documents that were not protected by the preliminary injunction order. We disagree.

■ "Preliminary injunctive relief is an extraordinary remedy designed to protect a plaintiff from sustaining irreparable injury and to preserve the power of the district court to render a meaningful decision following a trial on the merits." *Rathke v. MacFarlane, supra,* 648 P.2d at 651. "The grant or denial of a preliminary injunction does not amount to an adjudication of the ultimate rights in controversy. . . ." *Atmel Corp. v. Vitesse Semiconductor Corp.,* 30 P.3d 789, 792 (Colo.App.2001). Hence, an order that grants or denies preliminary relief "is not conclusive upon either the court or the parties on the subsequent disposition of the cause by final decree." *Allen v. City & County of Denver,* 142 Colo. 487, 489–90, 351 P.2d 390, 391 (1960)(quoting 28 Am.Jur. *Injunctions* § 279 at 793).

■ Here, the trial court first entered a preliminary injunction that enjoined the disclosure of 850 pages of documents that RMSM had demonstrated were confidential. However, it ruled that the preliminary injunction would also prohibit disclosure of other documents if, within thirty days, RMSM submitted a second affidavit that identified more documents "that properly come within the parameters" of the four categories the court listed in the preliminary injunction. The court also ruled that, within 120 days, RMSM could request that the court make the injunction permanent.

Within the time required, RMSM submitted a second affidavit in which it asserted that nearly all of the remaining 2,500 pages of documents were confidential. The Union challenged the second affidavit and argued that RMSM did not identify the additional documents according to the four categories as required by the court.

RMSM then filed a motion in which it requested the preliminary injunction be made permanent. The Union opposed the motion and again asserted that the second affidavit was not consistent with the limitations established in the court's preliminary injunction order. Prior to trial, the Union submitted a brief in which it argued, among other things, that the scope of the permanent injunction trial was limited to the question of whether any of the 850 pages of undisclosed confidential documents contained emission data and, therefore, must be disclosed regardless of their confidential status. At trial, the Union did not articulate the same argument, but asserted that the trial should be limited to the question of whether any of the confidential documents contained emission data.

Although the Union attempted to limit the scope of the trial to that issue, the trial court permitted RMSM to present additional evidence regarding the confidentiality of the 2,500 pages of documents. Based on that evidence, the trial court ruled that all the documents listed in RMSM's two affidavits contained "financial-commercial-trade secret information within the meaning of § 24–72–204(3)(a)(IV) and [that, except for the 760 pages of emission data, those documents] should not be disclosed."

On appeal, the Union argues that, because the preliminary injunction was an appealable order under C.A.R. 1(a)(3), only an appellate court could review it. And, because RMSM did not appeal that order, it was a final determination that the 2,500 pages were not confidential and must be disclosed. The Union cites no authority to support its position, and we reject this argument.

Instead, we conclude that the trial court's preliminary injunction order was not conclusive of the ultimate rights in controversy. Thus, the trial court could properly enter a permanent order that was more inclusive than the preliminary order. We further conclude the trial court's findings of fact regarding the confidentiality of the documents are supported by sufficient evidence in the record.

## IV.

Because we are upholding the trial court's determination that the 2,500 pages of documents are confidential and should not be disclosed pursuant to § 24–72–204(3)(a)(IV), we do not reach the Union's alternative contention that the trial court erred when it ruled that the remaining documents held by the Division were not public records under CORA.

## V.

RMSM contends that documents dated earlier than June 1996 should not be subject to disclosure because they are outside of the five-year limitations period to bring an action under the Colorado Air Pollution Prevention and Control Act. We disagree.

Section 25–7–123.1(1)(a), C.R.S.2002, provides that any action brought to enforce the Colorado Air Pollution Prevention and Control Act must be commenced "within five years of occurrence of the alleged violation."

RMSM argues that it is not obligated to disclose the documents because its production to the Division was for an alleged violation and the prosecution of that violation is limited to five years under § 25–7–123.1(1)(a).

To the contrary, the issue here is a request under CORA for documents in the custody of the Division. CORA does not contain a statute of limitations regarding requests for documents or any restriction on the dates of documents that must be disclosed. Therefore, whether the Division was entitled to the documents that were more than five years old with regard to the underlying violation of the Colorado Air Pollution Prevention and Control Act is not relevant to the Union's CORA request.

## VI.

Finally, we also reject RMSM's contention that the trial court abused its discretion when it granted the Union's request to intervene pursuant to C.R.C.P. 24(b)(2).

C.R.C.P. 24(b)(2) allows for permissive intervention when an applicant's contentions and the proceedings present common questions of law or fact, so long as the intervention will not unduly delay or prejudice the rights of the original parties. *In re Marriage of Paul*, 978 P.2d 136 (Colo.App.1998).

When a trial court allows intervention pursuant to C.R.C.P. 24(b), its ruling should not be disturbed absent a showing of abuse of discretion. *In re Marriage of Paul, supra; Tekai Corp. v. Transamerica Title Ins. Co.,* 39 Colo.App. 528, 571 P.2d 321 (1977); *see also Feigin v. Alexa Group, Ltd.,* 19 P.3d 23 (Colo.2001).

RMSM argues that the Union was not entitled to permissive intervention because the Union could not and did not add any factual information concerning the interpretation of the documents in question. It asserts that the Union has no protected interest in seeing the nonpublic documents and wants access only to assist it in pursuing unrelated litigation against RMSM.

However, the Union's claim to inspect these documents relies upon a common question of law and fact because its ability to inspect the documents will be affected by the outcome of the case. Because the Union is the only party to this case that has an interest in seeking release of the documents, and because the Division clearly indicated on the record that its interest was not aligned with the Union's interest, we conclude that the trial court did not abuse its discretion when it granted intervention pursuant to C.R.C.P. 24(b)(2). *Cf. Int'l Bhd. of Elec. Workers Local 68 v. Denver Metro. Major League Baseball Stadium Dist.,* 880 P.2d 160 (Colo.App.1994)(allowing intervention as a matter of right in a CORA case).

Although the trial court did not specifically find that the Union's claim had a question of law or fact in common with the main action, we conclude that the ruling was not an abuse of the trial court's discretion.

The order is affirmed.

Judge NEY and Judge MARQUEZ concur.