W. Douglas MORELAND, Plaintiff,

v.

Laurence ALPERT, a/k/a Lawrence Alpert, individually and d/b/a Columbine Financial Solutions, Inc., a Colorado corporation, and Razor's Edge Collections, L.L.C., Defendants–Appellants,

and

Mark Alsentzer and August C. Schultes, III, Intervenors–Appellees.

No. 04CA0400.

Colorado Court of Appeals, Div. V.

Oct. 6, 2005.

Dill Dill Carr Stonbraker & Hutchings, PC, Adam P. Stapen, Denver, Colorado, for Defendants–Appellants.

Burg Simpson Eldredge Hersh & Jardine, P.C., Stephen M. Johnson, Diane Vaksdal Smith, Daniel J. Sullivan, Englewood, Colorado, for Intervenors–Appellees.

GRAHAM, J.

Defendants, Laurence Alpert, also known as Lawrence Alpert, individually, and doing business as Columbine Financial Solutions, Inc., and Razor's Edge Collection, L.L.C., appeal the trial court's order ruling that by writs of garnishment, intervenors, Mark Alsentzer and August C. Schultes, III, established a creditor's claim to shares of stock that was prior to the claim plaintiff, W. Douglas Moreland, had attempted to establish by writs of attachment. We affirm.

In 2001, plaintiff filed a complaint in the trial court against defendants in which he sought damages for breach of contract, fraud, and other statutory claims. In connection therewith, he sought to attach defendants' assets prior to judgment.

In 2002, in response to plaintiff's ex parte request for prejudgment attachment pursuant to C.R.C.P. 102, the trial court issued a writ of attachment against all defendants' nonexempt property.

In January 2003, in New Jersey Superior Court, intervenors obtained a judgment against defendants. The judgment was domesticated in Arapahoe County District Court and entered as an order in April 2003.

Plaintiff learned that defendants had exercised, or were about to exercise, a warrant to purchase certain shares of common stock in a publicly traded corporation. Therefore, on November 19, 2003, plaintiff, with the aid of a sheriff's deputy, served Corporate Stock Transfer (C.S.T.), the stock transfer agent of the issuer, with a writ of attachment pursuant to C.R.C.P. 102(a). However, at the time of service, the deputy was unable to levy or seize any stock certificates because C.S.T. did not have them in its possession.

On December 1, intervenors served C.S.T. with their writ of garnishment with notice of exemption and pending levy pursuant to C.R.C.P. 103(2). The writ identified the judgment debtors as "Lawrence G. Alpert and/or Columbine Financial Solutions, Inc." Although then in possession of the stock certificates received from the issuer, C.S.T. did not own the stock and refused to deliver the shares to intervenors without a court order because C.S.T. had received plaintiff's prior writ of attachment.

On December 12, a stipulated settlement agreement between plaintiff and defendants was entered as an order of the trial court. Specifically, plaintiff agreed to dismiss three pending lawsuits against defendants in exchange for defendants' shares of stock, and defendants agreed to waive any technical defects in plaintiff's November 19 writ of attachment.

Three days later, C.S.T. filed an interpleader seeking leave to deposit the shares with the court, pending the priority determination between the competing claims of intervenors and defendants (claiming their right to the shares by virtue of plaintiff's interest).

On December 17, plaintiff served C.S.T. with a second writ of attachment pursuant to C.R.C.P. 102(a). However, C.S.T. had not yet become a party to the litigation because an order allowing the interpleader had not yet been signed, and no levy was effected by the sheriff's deputy.

The record reveals that, prior to C.S.T.'s motion to interplead the stock, intervenors did not have notice of plaintiff's competing interest in the shares of stock. On December 19, intervenors served defendants with a copy of their writ of garnishment with notice of exemption and pending levy pursuant to C.R.C.P. 103(2) and then, on December 22, intervenors filed their motion to intervene in the litigation.

A second writ of garnishment on a debtor other than a natural person, pursuant to C.R.C.P. 103(4), identifying the judgment debtor only as "Columbine Financial Solu-

tions, Inc." was served on C.S.T. by intervenors on December 23.

The trial court granted both C.S.T.'s and intervenors' motions for the purpose of determining priority between plaintiff's writs of attachment and intervenors' writs of garnishment.

The trial court set aside its earlier December 12, 2003, settlement order authorizing the release of the shares to plaintiff, quashed plaintiff's writs of attachment, quashed intervenors' first writ of garnishment, and found intervenors' second writ of garnishment to be superior and valid.

This appeal followed.

### I. Levy as Prerequisite to Attachment

We first address the priority of creditors' process because this issue is the fulcrum of analysis for most of defendants' arguments. We reject defendants' contention that plaintiff's writs were prior in time and right to intervenors' writs of garnishment.

C.R.C.P. 102 governs attachment and allows "[a]ny party, at the time of filing a claim ... [to] have nonexempt property of the party against whom the claim is asserted ... attached by an *ex parte* order of court in the manner and on the grounds prescribed in this Rule." C.R.C.P. 102(a). The rule requires that the sheriff attach the personal property at issue by "taking it into custody" and "return the writ of attachment within twenty days after its receipt ... making a full inventory of the property attached as a part of his return upon the writ." C.R.C.P. 102(h)(3), (i).

■ According to C.R.C.P. 102(h), for a levy of personal property to occur, the property must be taken into physical custody, and if the property is not taken into custody, the process fails and the attachment is void. *Crisman v. Dorsey*, 12 Colo. 567, 21 P. 920 (1889).

This rule comports with the Uniform Commercial Code rules for creditors' legal process pertaining to negotiable instruments. Generally, there must be actual manucaption, or physical possession, of a stock certificate

before a creditor can acquire a debtor's interest in the certificate.

Section 4–8–112, C.R.S.2005, sets forth the general rule that a creditor may reach a stock certificate only by actual seizure of the certificate by the sheriff. However, a creditor may serve legal process upon an issuer where the debtor has surrendered·the certificate to the issuer, or the creditor may seek the aid of the court to attach property that is not otherwise reachable by legal process. Section 4–8–112 provides in pertinent part:

(a) The interest of a debtor in a certificated security may be reached by a creditor only by actual seizure of the security certificate by the officer making the attachment or levy, except as otherwise provided in subsection (d) of this section. However, a certificated security for which the certificate has been surrendered to the issuer may be reached by a creditor by legal process upon the issuer.

. . . .

(d) The interest of a debtor in a certificated security for which the certificate is in the possession of a secured party ... may be reached by a creditor by legal process upon the secured party.

(e) A creditor whose debtor is the owner of a certificated security ... is entitled to aid from a court of competent jurisdiction, by injunction or otherwise, in reaching the certificated security ... or in satisfying the claim by means allowed at law or in equity in regard to property that cannot readily be reached by other legal process.

■ In this case, plaintiff's writs failed to attach to the stock certificates, and intervenors' writs of garnishment were the only legitimate creditor's process. In reaching this conclusion, we are called upon to interpret § 4–8–112 in light of the rules of legal process set forth in C.R.C.P. 102 and 103.

Statutory interpretation and construction are questions of law. *Yacht Club II Homeowners Ass'n v. A.C. Excavating*, 94 P.3d 1177 (Colo.App.2003), *aff'd*, 114 P.3d 862 (Colo.2005). In construing a statute, we adopt that construction which best gives effect to the intent of the general assembly.

*Cherry Creek Gun Club, Inc. v. Huddleston,* 119 P.3d 592 (Colo.App.2005).

■ We ascertain legislative intent by first looking to the plain language of the statute. *In re Marriage of Dale,* 87 P.3d 219 (Colo.App.2003). Giving effect to every word, we do not adopt a construction that renders any term superfluous, and thus, we will not read into a statute an exception or proviso that the plain language does not suggest. *Town of Telluride v. Lot Thirty-Four Venture, L.L.C.,* 3 P.3d 30.(Colo.2000).

■ We will apply the statute as written, unless doing so would lead to an absurd result. *Showpiece Homes Corp. v. Assurance Co.,* 38 P.3d 47 (Colo.2001). If statutory provisions conflict, we will adopt the interpretation that best harmonizes the provisions. *Berg v. Indus. Claim Appeals Office,* 128 P.3d 270, 2005 WL 1903825 (Colo. App. No. 04CA1130, Aug. 11, 2005).

### A. Requirement of Manucaption

In the official comment to § 4–8–112, the purpose of the requirement of actual seizure is revealed: "In dealing with certificated securities the instrument itself is the vital thing, and therefore a valid levy cannot be made unless all possibility of the certificate's wrongfully finding its way into a transferee's hands has been removed." Section 4–8–112 official cmt. 1.

The commentators warn that, unless a stock certificate is in the hands of a sheriff, a debtor may still transfer the stock, even though he may be under an order not to do so. Those commentators also observe that "although injunctive relief is provided in subsection (e) so that creditors may use this method to gain control of the certificated security, the security certificate itself must be reached to constitute a proper levy whenever the debtor has possession." Section 4–8–112 official cmt. 1.

Thus, an injunction may enjoin a debtor from transferring a security, but, because it is a negotiable instrument, the debtor may nevertheless transfer the security, even though he may be contemptuous in doing so.

We note that the record here shows defendants, the judgment debtors, did not have possession of the stock certificates, but were attempting to gain possession, with knowledge that intervenors had obtained a judgment against them.

However, the process of garnishment is governed by C.R.C.P. 103. This process differs significantly from that of a writ of execution. Garnishment requires a person in possession of "property of any kind" of a debtor to hold that property for the benefit of the person who serves the garnishment subject to the jurisdiction of the court that issued the garnishment. Indeed, this process gives "the court jurisdiction over the garnishee and personal property of any description, owned by, or owed to, a judgment debtor." C.R.C.P. 103(4)(e). The garnishment procedure specifically provides that "a writ of execution shall not be required." C.R.C.P. 103(4)(c).

We are thus called upon to reconcile the seeming conflict between § 4–8–112, which requires actual physical seizure of a stock certificate before it can properly be levied, and C.R.C.P. 103, which suggests that a stock certificate is placed within the jurisdiction of the court, under the principle of *in custodia legis,* simply by serving the person who possesses the certificate with a writ of garnishment.

As explained below, we conclude that the two provisions may be harmonized and that stock certificates may be reached by a creditor under either method. Accordingly, we find no error in the trial court's ruling that intervenors' writ of garnishment gave them a priority interest in the subject stock certificates.

### B. Plaintiff's November 19, 2003, Writ of Attachment

It is undisputed that when the sheriff's deputy served C.S.T. with the writ of attachment on November 19, C.S.T. did not have possession of the stock certificates, and there was no physical seizure or levy of the stock certificates. To effectuate the writ of attachment, the sheriff would have had to take possession, custody, or control of the stock certificates. *See Crisman v. Dorsey, supra.* Plaintiff did not serve the issuer or any other person or entity with process.

Under such circumstances, the mere attempt to levy did not give plaintiff, as the attaching creditor, any right to the property. *See Gottlieb v. Barton,* 13 Colo.App. 147, 57 P. 754 (1899).

## C. *In Custodia Legis*

Defendants attempt to satisfy the need for manucaption by arguing that C.S.T. was holding the stock certificates for plaintiff *in custodia legis,* meaning that they were "in the custody and keeping of the law" at that time the writ was served. *Black's Law Dictionary* 771 (7th ed.1999). In other words, defendants argue that through the concept of *in custodia legis,* there was an effective, or constructive, levy of the certificates. We disagree.

Although defendants cite authority for the proposition that a levy can be constructive, none of the cases cited deals with negotiable instruments. Indeed, the holding in *Crisman v. Dorsey, supra,* is contrary to defendants' constructive levy argument, because it establishes that the sheriff must actually possess personal property before it can be deemed to be *in custodia legis.*

*Justice v. Hoch,* 84 Colo. 528, 271 P. 1116 (1928), involved a levy of grain drills when a sheriff's notice was posted on the shed where the drills were stored. Some of the drills were removed from the shed without permission. The court found that the levy was proper and completed by locking the shed and posting the notice on the shed because taking control of the shed amounted to "custody as to enable an officer to retain and assert his power and control over the property." *Justice v. Hoch, supra,* 84 Colo. at 532, 271 P. at 1117 (quoting *Davidson v. Waldron,* 31 Ill. 120 (1863)). In such an instance the sheriff asserted control over the drills. However, in this case, the sheriff failed to assert control over the stock certificates.

In *Snyder v. O'Conner,* 102 Colo. 567, 81 P.2d 773 (1938), another case cited by defendants, the court held that a spendthrift trust could not be reached because it was part of a designated trust and the funds were *in custodia legis.* This case has nothing to do with an attempted levy against stock certificates. The trust was lawfully established and validly existing. Therefore, the res of the trust was beyond the reach of creditors. The court's conclusion that the res was *in custodia legis* does not imply that it was under the jurisdiction of the court. Instead, the court merely referred to the funds of the trust as being lawfully protected by a valid trust instrument. There is no suggestion here that C.S.T. held the stock certificates in trust for creditors. On the contrary, C.S.T. held the certificates for the benefit of registered owners of the stock and was duty bound to transfer the stock unless it had a restrictive legend on it prohibiting transfer. *See Edina State Bank v. Mr. Steak, Inc.,* 487 F.2d 640 (10th Cir.1973).

Nor does *First National Bank v. Monte Vista Hardware Co.,* 75 Colo. 440, 226 P. 154 (1924), support defendants' proposition. There, a levy of livestock was deemed made when horses were segregated and corralled by a sheriff, even though he did not remove them from the real property where they grazed. We agree that in such an instance, a levy is properly made because the animals were placed under the authority and control of the sheriff. We are aware of no rule requiring manucaption of a horse to satisfy the requirement of levy.

Defendants urge that here, C.S.T. had legal custody of the stock certificates and that such custody qualifies as a constructive levy. Nothing in the record indicates that C.S.T. agreed to hold the stock certificates for the sheriff or acted as an agent of either plaintiff or defendants. Defendants cite no case, and we have found none, which would allow C.S.T. to hold stock in lieu of the sheriff, thereby placing the stock within the jurisdiction of the court (and therefore *in custodia legis* ) to satisfy a levy.

■ The statutory requirements of the Uniform Commercial Code and the rules of attachment and garnishment convince us that negotiable instruments are subject to strict, and not constructive, compliance with the rule that they must be physically seized to be attached unless they fall into one of the other categories of process under which they may be legally subject to creditors' claims. C.R.C.P. 102, read in conjunction with § 4–8–

112(a), does not confer the jurisdiction necessary to establish that the stock certificates were *in custodia legis* after service of the November 19, 2003, writ of attachment.

### D. Plaintiff's December 17, 2003, Writ of Attachment

Plaintiff's second writ of attachment served on December 17 fails to accord priority for the same reasons the first writ was ineffective.

Although C.S.T. was in possession of the certificates at the time of service, it refused to give the certificates to the sheriff's deputy because it had been served with intervenors' earlier writ of garnishment. Apparently, the sheriff's deputy acquiesced in this refusal and did not demand or compel possession. Accordingly, no levy was made because the sheriff failed to take the stock certificates into his custody or to direct some alternative act that would place those certificates in the court's custody.

Consequently, plaintiff's second writ of attachment is also void for failing effectively to attach the stock certificates. *See Crisman v. Dorsey, supra.*

We are not suggesting in this analysis that C.S.T. could not be compelled to relinquish actual stock certificates. Certainly defendants could compel C.S.T. to hand over the certificates; however, the record does not indicate that any such procedure was undertaken.

### E. Intervenors' Writs of Garnishment

Garnishment procedures are set forth in C.R.C.P. 103. Writs of garnishment may be served upon persons who hold earnings of a judgment debtor and upon persons or entities who are in the possession and control of a judgment debtor's credits, debts, money, choses in action, or personal property of any kind. C.R.C.P. 103.

C.R.C.P. 103(2) prescribes a writ of garnishment that is directed to personal property other than the earnings of a natural person. It provides, in pertinent part, that this writ is "the exclusive procedure" through which "personal property capable of manual delivery ... owed to, or owned by, the judg-

ment debtor, and in the possession or control of the garnishee at the time of service of such writ upon the garnishee, shall be subject to the process of garnishment." C.R.C.P. 103(2)(a), (c). This type of writ specifically does not require a writ of execution. C.R.C.P. 103(2)(c). As with all forms of the writ, once served, the garnishee holds the property of the debtor *in custodia legis.*

Another form of writ garnishment is provided for in C.R.C.P. 103(4). It is a writ of garnishment to a judgment debtor who is not a natural person, and the section provides that it is the "exclusive procedure through which personal property of any kind of a judgment debtor other than a natural person" may be garnished. C.R.C.P. 103(4)(a). As is the case with the form of writ which garnishes personal property of natural persons, a writ of execution is not required before the writ of garnishment's lien attaches and the debtor's property comes within the jurisdiction and control of the court. C.R.C.P. 103(4)(c).

■ The provisions of § 4–8–112(e) work in harmony with the process provided in C.R.C.P. 102 and 103. When the statutory requirements are read together with the rules of process, it is apparent that a judgment creditor may take physical possession through a levy of the judgment debtor's stock certificates by serving a writ of execution upon the debtor, provided the debtor is holding the security and complying with C.R.C.P. 102 and § 4–8–112(a).

■ Alternatively, a judgment creditor may garnish the debtor's personal property, including stock certificates, in the hands of a third person. Section 4–8–112(e); C.R.C.P. 103.

■ We do not read the provisions of § 4–8–112(e) as mandating a court order "in regard to property that cannot readily be reached by other legal process." Here, there was no showing that such an order was required because the stock certificates could not readily be reached by other legal process. Section 4–8–112(e) also states that a creditor is "entitled to aid from a court of competent jurisdiction" so that a court with jurisdiction over the property may "satisfy[ ] the claim

by means allowed at law or in equity." Therefore, once a valid writ of garnishment is served, the personal property then held by the garnishee comes within the jurisdiction of the court and is subject to the creditor's claim.

■ Applying this analysis to the facts here, we conclude that plaintiff chose to use the legal process afforded by C.R.C.P. 102, but the process failed because there was no levy of the stock. In contrast, intervenors chose to use the legal process afforded by C.R.C.P. 103, and once a valid writ of garnishment was served, the stock certificates—and C.S.T., the transfer agent—became subject to the jurisdiction of the court.

Here, the trial court ruled that only the second writ of garnishment was effective because the first writ was not issued on the proper form. Because the first writ was on a form to be served when the debtor is a natural person, the trial court reasoned that it "was improper and thus unenforceable."

■ However, because the second writ was issued on the form prescribed where the judgment debtor is other than a natural person, the trial court correctly concluded that it was "the proper writ for garnishing the property of a corporate judgment debtor and was the first writ properly served on C.S.T. after C.S.T. gained possession of the ... shares."

In light of our conclusion that neither of the writs of attachment was effective, we need not consider intervenors' argument that their first writ of garnishment effectively attached the stock certificates even though it was on a form used with the notice of exemption for natural persons. Intervenors are entitled to priority even assuming, without deciding, that only the second writ of garnishment was valid.

### F. Court's December 12 Order

■ Nor are we persuaded that the trial court's order of December 12, 2003, was effective in seizing the stock or otherwise subjecting the stock to the jurisdiction of the court. At most, the order was an incorporation of plaintiff's and defendants' agreement to transfer the shares of stock to plaintiff in exchange for plaintiff's dismissal of three pending claims against defendants. The record indicates that no shares were ever transferred under this agreement, and the order does not state that it was entered to reach the shares.

On the contrary, the trial court indicated that when it entered its order, it was not aware of intervenors' writ of garnishment or of competing claims from another judgment creditor. The trial court vacated the order without plaintiff ever acquiring possession or control of the stock certificates.

Although pursuant to § 4–8–112(e), "[a] creditor whose debtor is the owner of a certificated security ... is entitled to aid from a court of competent jurisdiction, by injunction or otherwise, in reaching the certificated security," the trial court's order did not qualify under this exception because there was no jurisdiction over the stock certificates at the time it was entered. The order that incorporated the settlement agreement also failed to comply with the requirements of § 4–8–112(e) because it was not an injunction and was not addressed as an alternative means of allowing plaintiff to reach the stock certificates. Moreover, when the order was entered, C.S.T. was not a party to the suit and therefore, was not subject to the jurisdiction of the court.

We therefore discern no error in the trial court's order recognizing intervenors as having the prior claim as creditors.

### II. Timely Intervention

Defendants next contend that intervenors' motion to intervene was untimely and failed to satisfy the requirements of C.R.C.P. 24 and 102. We disagree.

Pursuant to C.R.C.P. 102(k)(2), timely intervention by a creditor may be made by filing a request to intervene within thirty days after levy has been made under the writ of attachment in the original proceeding. *Hartner v. Davis,* 100 Colo. 464, 68 P.2d 456 (1937). Here, it is undisputed that intervenors' request was filed December 22, 2003, more than thirty days after the initial writ of attachment was served on November 19, 2003.

C.R.C.P. 24 provides that a nonparty may intervene in a civil action as a matter of right or by permissive intervention.

One who timely files an application for intervention may intervene as a matter of right if a statute confers an unconditional right to intervene or (1) the applicant claims an interest in the subject matter of the litigation; (2) the disposition of the case may impede or impair the applicant's ability to protect that interest; and (3) the interest is not adequately represented by existing parties. C.R.C.P. 24(a); *People v. Ham*, 734 P.2d 623 (Colo.1987); *Dillon Cos. v. City of Boulder*, 183 Colo. 117, 515 P.2d 627 (1973); *Higley v. Kidder, Peabody & Co.*, 920 P.2d 884 (Colo.App.1996).

C.R.C.P. 24(b)(2) allows for permissive intervention when an applicant's contentions and the proceedings present common questions of law or fact, so long as the intervention will not unduly delay or prejudice the rights of the original parties. *CF & I Steel, L.P. v. Air Pollution Control Div.*, 77 P.3d 933 (Colo.App.2003).

■ The determination of the timeliness of a motion to intervene is a matter which rests within the sound discretion of the trial court. *In re Marriage of Guinn*, 522 P.2d 755 (Colo.App.1974)(not published pursuant to C.A.R. 35(f)). Absent an abuse of discretion, a trial court's ruling will not be disturbed on appeal. *Tekai Corp. v. Transamerica Title Ins. Co.*, 39 Colo.App. 528, 571 P.2d 321 (1977).

■ The rule governing intervention should be liberally interpreted to allow, whenever possible and compatible with efficiency and due process, issues related to the same transaction to be resolved in the same lawsuit and at the trial court level. *Feigin v. Alexa Group, Ltd.*, 19 P.3d 23 (Colo.2001).

■ Here, intervenors' claim relies upon a common question of fact and law because their ability to secure the stock certificates will be affected by the outcome of the case. Because it is undisputed that intervenors are judgment creditors of defendants who have an interest in seeking possession of the stock certificates and because the record clearly indicates that defendants' interest was not aligned with intervenors' interest, we conclude that the trial court did not abuse its discretion when it granted intervention.

However, as previously discussed, it is undisputed that the sheriff failed to seize or take the stock certificates into possession. Without physical custody, there was no levy, *see Crisman v. Dorsey, supra,* and, for that reason, the trial court was correct in determining that intervenors' motion was not untimely because the thirty-day time limit had not begun to run.

Under these circumstances, we find no error and will not disturb the trial court's ruling that the intervention was timely.

### III. Collateral Attack on Writs of Attachment

Defendants argue that the trial court erred in allowing intervenors to collaterally attack the merits of plaintiff's writs of attachment. In our view, the circumstances here do not present a collateral attack of the writs.

■ An intervenor in an attachment proceeding may succeed only by showing a paramount title, interest, or lien. An intervenor may not attack the sufficiency of the plaintiff's affidavit upon which the writ was issued, nor may he challenge the service of the writ. *Elliott v. First Nat'l Bank*, 2 Colo. App. 164, 30 P. 53 (1892). In *Elliott*, it was observed that where the question was not raised "between the parties to the suit, and not affecting the jurisdiction of the court," the writ could not be quashed. *Elliott v. First Nat'l Bank, supra,* 2 Colo.App. at 168, 30 P. at 54.

Here, the question of jurisdiction is raised because it was necessary to determine the priority of claims. Intervenors attempted to show that their claim was paramount to that of plaintiff, precisely as a result of the correct process subjecting the stock to the jurisdiction of the court. Rather than attacking the bona fides of the writs, intervenors established that their garnishment was prior in time and right.

Even if intervenors could be seen as having made a collateral attack upon the writs, it would not alter the fact that according to the

correct creditors' process, plaintiff's writs of attachment were void because there was no levy as required by C.R.C.P 102(a), (h)(3), and (i), § 4–8–112, and *Crisman v. Dorsey, supra.* The levy was required in order to confer jurisdiction.

### IV. Settlement Agreement and Corresponding Order

Defendants argue that they had the absolute right to transfer the shares of stock pursuant to the settlement agreement they entered into with plaintiff on December 12, as well as pursuant to the corresponding order from the trial court. Defendants contend that because intervenors' December 1 writ of garnishment was filed while the stock certificates were *in custodia legis,* the settlement agreement and corresponding order gave them the authority to transfer the stock certificates to plaintiff. We are not persuaded.

As discussed above, we reject defendants' argument that the stock certificates were *in custodia legis* as a result of the service of either of plaintiff's writs because there was no physical change of possession and consequently no levy as required by both C.R.C.P. 102 and § 4–8–112(a). Furthermore, even if defendants had a right to transfer the shares to a third party, the record indicates that they did not do so. The stock was never transferred to a third party, but remained in the custody and control of C.S.T. until a valid writ of garnishment was served.

Pursuant to the settlement agreement and the order, defendants agreed to waive any technical defects present in plaintiff's November 19 writ of attachment, and now they argue that because the agreement was executed prior to the service of intervenors' second writ of garnishment and divested defendants with the power to transfer the stock, the shares were transferred to plaintiff before service of the second writ of garnishment.

However, as discussed above, the deficiency in the writs was not a technical defect; instead, they were both void for failure to levy the stock certificates. *See* § 4–8–112; C.R.C.P 102(a), (h)(3), (i); *Crisman v. Dorsey, supra.*

As a result, we conclude that the trial court did not err in setting aside its order accepting the settlement agreement between plaintiff and defendants.

The order is affirmed.

VOGT and ROMÁN, JJ., concur.